SCHRAUBSTADTER et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 7, 1912.)

No. 2,014.

1. FOOD (§ 20*)—MISBRANDING—INDICTMENT—REQUISITES—PRIOR INVESTIGA-
TION—NOTICE.

An indictment for misbranding champagne in violation of the Pure
Food and Drugs Act (Act June 30, 1906, c. 3915, 34 Stat. 768 [U. S.
Comp. St. Supp. 1911, p. 1354]) was not invalid for failure to allege
a preliminary investigation by an officer of the Department of Agri-
culture, a notice to defendants of their violation of the act, or that de-
fendants were afforded an offer to present evidence and be heard.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 21; Dec. Dig. §
20.*

What constitutes a violation of pure food regulations, see note to
Brina v. United States, 105 C. C. A. 559.]

2. FOOD (§ 14*)—MISBRANDING—CHAMPAGNE WATER—EVIDENCE.

Where defendants sold in interstate commerce a domestic wine, arti-
ficially carbonated, under a label "Extra Dry Champagne," with a de-
sign and other words in French calculated to induce a purchaser to
believe he was buying a foreign and not a domestic product, defendants
were guilty of misbranding, in violation of the Pure Food and Drugs
Act.

[Ed. Note.—For other cases, see Food, Cent. Dig. §§ 10–13; Dec. Dig.
§ 14.*]

3. INDICTMENT AND INFORMATION (§ 81*)—DESIGNATION OF DEFENDANTS.

An indictment described defendants as S. and G., "doing business in
the city and county of San Francisco under the firm name and style of
A. Finke's Widow, hereinafter called the defendants." Held, that the
quotation was merely descriptive of the persons indicted, and that the
indictment would be regarded as of the individual members of the firm,
and not of the firm under its firm name.

[Ed. Note.—For other cases, see Indictment and Information, Cent.
Dig. §§ 216–224; Dec. Dig. § 81.*]

4. CRIMINAL LAW (§ 878*)—TRIAL—VERDICT—CONSTRUCTION.

An indictment charged defendants in three counts with misbranding,
in violation of the Pure Food and Drugs Act (Act June 30, 1906, c. 3915,
34 Stat. 768 [U. S. Comp. St. Supp. 1911, p. 1354]), and the verdict was
"guilty as charged in the indictment." Held, that the verdict was tanta-
mount to a conviction on each of the three counts.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2098–
2101; Dec. Dig. § 878.*]

5. CRIMINAL LAW (§§ 995, 1214*)—CONVICTION—SENTENCE.

Defendants, members of a firm, were indicted individually in separate
counts for three separate violations of the Pure Food and Drugs Act
(Act Cong. June 30, 1906, c. 3915, § 2, 34 Stat. 768 [U. S. Comp. St.
Supp. 1911, p. 1354]), which provides $200 as the maximum fine for the
first offense. The jury returned a verdict of "guilty as charged in the
indictment," whereupon the court rendered judgment that "each of the
defendants pay a fine of $100 on each count of the indictment, consist-
ing of three counts, to wit, the sum of $300 each." Held, that the fine
was not excessive, and that the statement of the aggregate thereof did
not invalidate the judgment.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2518,
2521, 2523–2526, 2528½, 2536–2543, 3304–3309; Dec. Dig. §§ 995, 1214.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

In Error to the District Court of the United States for the Northern District of California.

Ernest Schraubstadter and Emile A. Groezinger were convicted of violating the Pure Food and Drugs Act, and they bring error. Affirmed.

Plaintiffs in error were indicted under the Pure Food and Drugs Act, convicted, and fined each $300, from which judgment this writ of error is prosecuted. The indictment contains three counts. In each of the counts the defendants are described as "Ernest Schraubstadter and Emile A. Groezinger, doing business in the city and county of San Francisco, under the firm name and style of A. Finke's Widow, hereinafter called the defendants." By the first count it is charged that on the 28th day of December, 1909, they did willfully, unlawfully, and knowingly ship and cause to be shipped from the city and county of San Francisco, state and Northern district of California, to D. Holzman, at Spokane, in the state of Washington, "five cases of half bottles of so-called champagne, each bottle of which so-called champagne in each of the cases aforesaid was misbranded in the following particulars, to wit: The label on the neck of each of the bottles aforesaid contained the words 'Extra Dry Champagne' (with a design of a crown), and the main label on each of the bottles aforesaid contained the words: 'Champagne Brand Defleur Fils & Cie. Grand Vin Royal. Guaranteed under the Pure Food and Drugs Act, June 30th, 1906, Serial No. 7016' (with a design of a fancy coat of arms)." It is then charged that the said labels were designed to mislead the purchaser into the belief that the product was a champagne manufactured in a foreign country, when in truth and in fact it is not a champagne at all, but a white wine artificially carbonated, and said labels do not give any information as to the real place of production or manufacture, and the real fact is that the product in said bottles is a domestic wine artificially carbonated.

The second count charges a shipment of a like number of cases of "so-called champagne" on the same day from San Francisco to Spokane, each bottle of which was misbranded in the following particulars, to wit: "The label on the neck of each of the bottles aforesaid contained the words 'Extra Dry' (with a design of a crown), and the main label on each of the bottles aforesaid contained the words 'Crown Brand Champagne' (with the design of a crown and crossed scepters), and underneath the words: 'Guaranteed under the National Pure Food and Drugs Act, June 30th, 1906.'" And it is further charged that the product in said bottles contained was not in fact champagne, but a domestic wine artificially carbonated, and the said product was and is calculated to deceive the purchaser thereof.

The third count pertains to a sale and delivery to McDonald & Cohn, importers and wholesale liquor dealers of San Francisco, of two cases of half bottles of so-called champagne, misbranded in the following particulars, to wit: "The label on the neck of each of the bottles aforesaid containing the words 'Extra Dry Champagne' (with a design of a shield and the monogram A. F. W.), and the main label on each of the bottles aforesaid contained the words: 'Cuvée Special E. L. Mercier & Cie. Brand. Extra Dry. Guaranteed under the Pure Food and Drugs Act, June 30th, 1906. Serial No. 7016'"—which the said McDonald & Cohn caused to be shipped from San Francisco to Benson, Ariz. It is then charged with like effect as in the first count, and, further, that defendants gave to the purchaser a written guaranty that the goods so purchased complied with the provisions of the Pure Food and Drugs Act, and that in so selling said wine defendants did so with the knowledge that the same might be entered into the commerce of the country as a champagne.

Trial was entered upon before a jury, but before the same was completed the jury was discharged under an agreement that the trial should be had before the court, waiving a jury. On conclusion of the testimony, and after hearing the argument of counsel, it was "by the court ordered that a judgment of guilty be, and the same is hereby, entered as charged in the indictment herein." Thereafter judgment was rendered as follows: "It is there-

fore ordered and adjudged that each of said defendants pay a fine of one hundred (100) dollars, on each count of the indictment herein, consisting of three counts, to wit, the sum of three hundred (300) dollars each." Previous to the entry thereof a motion was filed in arrest of judgment, based upon the insufficiency of the indictment.

Bert Schlesinger and S. C. Wright, both of San Francisco, Cal., for plaintiffs in error.

John L. McNab, U. S. Atty., and Earl H. Pier, Asst. U. S. Atty., both of San Francisco, Cal., for the United States.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). [1] The first objection interposed by defendants challenges the sufficiency of the indictment. The alleged misbranding was preliminarily investigated by the proper officer of the Department of Agriculture, but it will be seen that the fact of such investigation is not set forth in the indictment, nor does it show that any notice was given by the Secretary of Agriculture to the defendants, notifying them of the violation of said act, nor that defendants were thereby afforded an opportunity to present evidence or to be heard. For these and other grounds of like nature it is contended that the indictment is insufficient. In other words, it is argued that the indictment should set forth the doing of the things required to be done under sections 4 and 5 of the act in question. The very contention has been set at rest to the contrary in the case of United States v. Morgan, 222 U. S. 274, 32 Sup. Ct. 81, 56 L. Ed. 198. The defendants in that case added mineral salts to water drawn from the water supply in New York City, and, charging it with carbonic acid, bottled and sold it as "Imperial Spring Water." An invoice of this they sold and shipped into New Jersey, and were indicted for shipping misbranded goods in interstate commerce. The indictment there, as here, did not set forth the facts the want of which it is claimed renders the present one objectionable. The court held the indictment sufficient, however, reversing the judgment of the court below to the contrary. The court says:

"The provision as to the hearing is administrative, creating a condition where the district attorney is compelled to prosecute without delay. When he receives the Secretary's report, he is not to make another and independent examination, but is bound to accept the finding of the department that the goods are adulterated or misbranded, and that the party from whom they had been obtained held no guaranty. But the fact that the statute compels him to act in one case does not deprive him of the power voluntarily to proceed in that and every other case under his general powers. If, for any reason, the Executive Department failed to report violations of this law, its neglect would leave untouched the duty of the district attorney to prosecute 'all delinquents for crimes and offenses cognizable under the authority of the United States.' Rev. Stats. §§ 771, 1022 (U. S. Comp. St. 1901, pp. 601, 720). So an improper finding by the department would no more stay the grand jury than an order of discharge by a committing magistrate after an ordinary preliminary trial; for the statute contains no expression indicating an intention to withdraw offenses under this act from the general powers of the grand jury, who are diligently to inquire and true presentment make of all matters called to their attention by the court, or that may come to their knowledge during the then present service."

The indictment in the case at bar must be held sufficient.

[2] It is suggested that the evidence indisputably shows (and the entire evidence is in the record) that the defendants used the labels in good faith, believing that they had a perfect right to call their wine "California Champagne"; that it was sold as such without objection, and had been known to the trade for many years under that designation. The labels, however, which are evidentiary of the misbranding, contain no such designation or legend as "California Champagne," and the trial court found that they were misleading, and that the dress on each of the packages indicated a design to create in the minds of the consumers the impression that they were "purchasing a foreign and not a domestic product." Unquestionably there is evidence in the record tending to support this conclusion, and, being a question of fact, this court will take no note as respects the weight of the evidence.

Three other contentions are made: First, that the judgment is void, because it is single, and not upon each count, and for $300, an amount in excess of the maximum fine for the first offense; second, that the indictment was against the defendants as an association, and hence a single fine should have been imposed; and, third, that there was no separate conviction upon each count of the indictment, hence a single judgment should have been imposed, which should not have exceeded by fine $200. We will answer the second first, and then the third.

[3] The indictment is against "Ernest Schraubstadter and Emile A. Groezinger, doing business in the city and county of San Francisco under the firm name and style of A. Finke's Widow, hereinafter called the defendants." The very statement shows an intendment to indict the defendants personally, and not the firm as a firm. The recitation "doing business" in San Francisco, etc., is but descriptive of the persons composing the firm, and it would be exceedingly technical to hold that such an indictment was an indictment of the firm, and not of the persons composing it. An indictment so drawn will be treated as an indictment of the individual members of the firm, and not of the firm under its firm name. State v. Powell, 3 Lea (Tenn.) 164. The indictment here should be treated likewise.

[4] The form of conviction is: "Guilty as charged in the indictment." This was a conviction of the three offenses charged by the three counts of the indictment. In Ballew v. United States, 160 U. S. 187, 16 Sup. Ct. 263, 40 L. Ed. 388, the defendant was indicted by two counts; one charging him with wrongfully withholding from a pensioner part of the pension allowed and due her, and the other with demanding and receiving as agent a greater compensation for services in prosecuting the claim for pension than is provided by law, and the jury returned a general verdict of guilty. Speaking of the verdict, the court says:

"That in a case such as this a general verdict is proper, and imports of necessity a conviction as to both crimes, is settled"—citing Claassen v. United States, 142 U. S. 140, 146, 12 Sup. Ct. 169, 35 L. Ed. 966.

The verdict in the case at bar was therefore tantamount to a conviction upon each of the three counts contained in the indictment.

It is beyond controversy that each of said counts charges a separate and distinct offense, based upon altogether different acts of the defendants, but of such character as were properly included in one indictment. The offenses charged are shipping or causing to be shipped misbranded goods in interstate commerce.

[5] This brings us back to the first of the three contentions stated. The form of the judgment is that: "Each of said defendants pay a fine of one hundred (100) dollars, on each count of the indictment, consisting of three counts, to wit, the sum of three hundred (300) dollars each." The judgment could not be more specific, declarative of a purpose of imposing a fine of $100 on each defendant under each count of the indictment; the maximum fine for the first offense being $200. Act June 30, 1906, c. 3915, § 2, 34 Stat. 768 (U. S. Comp. St. Supp. 1911, p. 1354). So that the fine imposed was not excessive. The stating of the aggregate of the fines to be $300 did not invalidate the judgment. The case of United States v. Peeke, 153 Fed. 166, 82 C. C. A. 340, 12 L. R. A. (N. S.) 314, does not help the defendants' contention. It relates to cumulative sentences of imprisonment. In this case it is a sentence by fine, and, when properly analyzed, it is not even cumulative, as a fine of $100 is imposed upon each count.

Affirmed.