No. 35,757

ROBERT MARTIN, *Appellant,* v. MILTON F. AMRINE, Warden of the State Penitentiary, *Appellee.*

(133 P. 2d 582)

Opinion filed January 23, 1943.

*Edward Rooney,* of Topeka, was on the briefs for the appellant.

*Shelley Graybill,* assistant attorney general, argued the cause, and *Jay S. Parker,* attorney general, and *William H. Biddle,* county attorney of Leavenworth county, were on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: In this action petitioner is confined in the state penitentiary at Lansing for the crime of forgery. He brought a habeas corpus action in the district court of Leavenworth county. Judgment there was for respondent. Petitioner appeals.

The petitioner acted as his own counsel and it is a little difficult to grasp just what his complaint is. He does not challenge the regularity of any of the proceedings by which he is confined so the

history of his trouble as it appears in the official records, which have been furnished us by the attorney general, will be set down here and then perhaps the matters of which he complains will become apparent.

The trouble of this petitioner started on March 19, 1936, when he pleaded guilty to forgery in the second degree and on account of his being between sixteen and twenty-five years of age was sentenced to be confined for a term of not less than ten years in the Kansas Industrial Reformatory at Hutchinson. Without executive clemency this sentence would mean that petitioner, with time out for good behavior, would be entitled to his release a little less than ten years from 1936 or along sometime in 1944. Not many men are held in the industrial reformatory for their maximum terms, however. They usually are paroled before they have served quite a year. In this case petitioner was paroled after he had served a little over two years. It must be remembered that he was only paroled. He was not pardoned. The state still retained a supervisory control over him. As is well established, he was subject to having his parole revoked for any one of a number of reasons.

On January 10, 1939, he again pleaded guilty to forgery and was sentenced to be confined at the industrial reformatory until discharged according to law. On the same date he pleaded guilty to another charge of forgery in the same court and received the same sentence. This latter sentence provided, however, that it should run concurrently with the sentence in the companion case.

On July 19, 1939, the board of administration, being the state agency which has charge of the affairs of the penal institutions, issued an order providing that petitioner, along with other inmates of the reformatory, should be transferred to the Kansas State Penitentiary at Lansing for the reason that they were not fit subjects to be incarcerated in a reformatory. Pursuant to this order, petitioner was so transferred and is now confined in the state penitentiary at Lansing.

As it appears from his petition and brief, he first complains that he has not been given credit on his two latest sentences for the time he served on his first sentence, or to put it another way he contends that after he was sentenced and confined the second time all three of his sentences should run concurrently. We gather that to be his complaint, because he included in the record, which he brought here, a letter from the record clerk of the penitentiary to the effect that

his term would expire on the sentence he was then serving July 23, 1943, if he continued to get good time, and that he would then have to serve six years and twenty-six days on the new charge with the regular time for good behavior. He wants us to decide whether when he came back into confinement and started serving his old sentence he should not at the same time have been given credit for all that time on his new sentence. We cannot decide such a question in a petition for a writ of habeas corpus. Petitioner does not contend that he is entitled to be released now. He will not have finished serving his first sentence until July 23, 1943. He does not contend that his restraint is illegal. He is only entitled to a writ when the restraint is illegal. See G. S. 1935, 60-2201.

A similar situation was considered in *McNally v. Hill*, 293 U. S. 131, 79 L. Ed. 238. There the petitioner had been convicted on an indictment charging him with three different acts in three separate counts in connection with the theft of an automobile. He brought habeas corpus assailing the third count alone. The court held:

"The writ of habeas corpus is not available to secure the judicial decision of any question which, even if determined in the prisoner's favor, could not result in his immediate release." (79 L. Ed., headnote 4.)

See, also, the rule as stated in 25 Am. Jur., sec. 15, Habeas Corpus, as follows:

"As in the case of an appeal or a writ of error, a writ of habeas corpus will not be granted to determine a mere abstract or moot question. The writ is available only where the release of the prisoner will follow as a result of a decision in his favor. It will be denied where it is apparent that the only result, if the writ were issued, would be the remanding of the petitioner to custody."

Following these authorities, we conclude that we cannot in this action answer the question propounded by petitioner as to whether his terms run concurrently.

Another question raised by petitioner has to do with his being transferred to the penitentiary at Lansing and his consequent confinement there. He argues that since the court sentenced him to the industrial reformatory that he could legally be confined there and nowhere else. This argument is not good. The industrial reformatory and the penitentiary at Lansing are each a part of the penal system of the state. There is a distinction between them, in that the reformatory is used in a large measure for a place of confinement of men convicted for the first time of an offense, or are still young

enough that there is a better chance of their learning some useful trade and becoming law-abiding citizens. The idea is to shield them from association with men who have gone far enough along the road of criminal life as to hold very little promise. The reformatory was established for that reason. It soon became evident, however, that not every person between the ages of sixteen to twenty-five was amenable to the less strict discipline of the reformatory and that occasionally a man of those years would have all of the characteristics of a hardened criminal. These men were preventing the carrying out of the plan for which the reformatory was established. On this account G. S. 1935, 76-2314, was enacted. It provides as follows:

"The board of administration shall have power to transfer to the state penitentiary any prisoner who, subsequent to the committal, shall be shown to have been at the time of his conviction more than twenty-five years of age, or to have been previously convicted of a felony, and may also transfer any apparently incorrigible prisoner, whose presence in the reformatory appears to be seriously detrimental to the well-being of the institution; and such board of administration may require the return to the reformatory of any person who has been so transferred. Said board of administration shall also have power to transfer to a state hospital any person who becomes insane."

The order pursuant to which petitioner was transferred was passed in conformance with this section. No reasons have been shown why the foregoing statute should be declared invalid.

The judgment of the district court is affirmed.

PARKER, J., not participating.