No. 45,168

Blonn Miller, *Appellant,* v. State of Kansas, *Appellee.*

(438 P. 2d 87)

Opinion filed March 9, 1968.

*Walter B. Patterson,* of Fort Scott, argued the cause and was on the brief for the appellant.

*Charles M. Warren,* County Attorney, argued the cause and *Robert C. Londerholm,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

Fontron, J.: This action is brought by the petitioner, Blonn Miller, pursuant to K. S. A. 60-1507, seeking relief from a judgment of conviction entered against him on December 5, 1962. An evidentiary hearing was held on petitioner's motion, at the conclusion of which his motion was overruled. The petitioner has appealed. He will be referred to throughout this opinion either by name or as petitioner.

A bit of background is essential. In 1947, Mr. Miller and his three sisters, Charlotte Hackney, Maxine Hereford and Joanne Chapman,

purchased from their father the business known as the Banner Dairy Products of Fort Scott, Kansas, and continued the business as a partnership until it was closed early in 1962.

Only three of the partners, Blonn Miller, Charlotte Hackney and Maxine Hereford actively participated in the business, their sister Joanne taking no part. Blonn was the plant overseer and ran the feed business, while Charlotte and Maxine ran the office, kept the books and attended generally to the business end of the operation. Charlotte figured and made out the checks, and signed most of them, although all three partners had authority to sign checks and knew how the bank account was being handled.

For a good many years the partnership prospered, often grossing over a million dollars annually. However, for the last two or three years of its operation, the partnership was hard up and the business lost a lot of money. During this time the partners sold their Allen County farm and invested $25,000 of the proceeds in the business. In addition, they sold a town property and put the money from that sale in the partnership.

Time eventually ran out and the Banner Dairy was forced to close its doors because of difficulties which arose with a Grade A Milk Association. The exact date of closing is not shown in the record, but it is reasonable to assume, from what the record does reveal, that it was late February or early March, 1962.

As frequently happens when a business of this kind is unable to continue, a good many checks were outstanding when the doors closed, and were subsequently dishonored. On October 19, 1962, an information was filed charging the petitioner, together with his sisters Charlotte and Maxine, with 53 counts of making and uttering bad checks, forty-two counts charging felonies and eleven charging misdemeanors. The counts were identical in wording except as to dates, amounts, and payees, and were in the following form (the misdemeanor counts omitting the word "feloniously"):

"IN THE DISTRICT COURT OF BOURBON COUNTY, KANSAS.

The State of Kansas,
                              Plaintiff,
        v.
CHARLOTTE HACKNEY, MAXINE HEREFORD          No. 4138
and BLONN MILLER, partners, d/b/a BANNER
DAIRY, Fort Scott, Kansas,
                              Defendants.
                          Information

STATE OF KANSAS, BOURBON COUNTY, ss.

I, Charles M. Warren, the undersigned County Attorney of said County, in the name, and by the authority, and on behalf of the State of Kansas, come now here, and give the Court to understand and to be informed, that on the 17th day of February, 1962, in said County of Bourbon, and State of Kansas, one CHARLOTTE HACKNEY, MAXINE HEREFORD and BLONN MILLER, partners, d/b/a BANNER DAIRY PRODUCTS, Fort Scott, Kansas, did then and there unlawfully, feloniously and wilfully draw, make, utter, issue and deliver to DALE HEREFORD their certain check in writing, drawn upon The Thornton National Bank of Nevada, Missouri, in the sum of $678.83, payable to the order of Dale Hereford, knowing at the time of the making, drawing, uttering and delivery of said check that they had no funds on deposit in or credits with said bank, with which to pay said check upon presentation. A copy of said check in letters and figures is as follows, to-wit:

BANNER DAIRY PRODUCTS          No. 19726
Banner Ice Cream
                                   Fort Scott, Kansas, Feb. 17, 1962.
Pay to the order of
   Dale Hereford ........................................$678.83
The sum of $678 and 83 cts. .................. ............... Dollars
                              Banner Dairy Products
                              By M. Hereford

To THORNTON NATIONAL BANK
of Nevada, Missouri
Bank shows: Insufficient funds"

Fifty-one checks were dated in February, and two in January. Only one check was signed by Blonn, the petitioner herein. This check was dated 1-19-62 and the evidence disclosed that it was given for feed purchased from General Mills.

On October 31, 1962, the three defendants personally appeared for arraignment, being accompanied by their attorney, Forrest E. Short, of Fort Scott. At this time, all three defendants entered pleas of not guilty and bonds were set by the court. Later, and on November 16, 1962, the same defendants again appeared in court, accompanied by the same counsel, and all three withdrew their *not guilty* pleas and entered pleas of *guilty* to all fifty-three counts. Sentencing was deferred until December 5, 1962, at which time the petitioner was sentenced to the Kansas State Penitentiary for not less than one nor more than five years on each felony count, the sentences to run concurrently, and to the county jail of Bourbon County for a period of six months on each misdeamonor count, sentences on counts forty-three and forty-four to run consecutively,

and the other misdemeanor sentences to run concurrently. Similar sentences to the Women's Industrial Farm at Lansing and to the Bourbon County jail were imposed against Charlotte and Maxine.

The two sisters were granted immediate probation from the bench, while their more unfortunate brother languished in jail on the misdemeanor sentences until February 13, 1963, at which time he was placed on probation for a period of five years on certain conditions specified in the probation order.

On March 22, 1967, the present action was filed under the provisions of K. S. A. 60-1507 attacking the validity of Blonn's convictions and the sentences imposed against him. Before proceeding to the merits of the points raised on appeal, we should take a look at the state's contention that the petitioner was not in custody when he initiated this proceeding and hence had no right to maintain the action in the first place.

We believe the state's position cannot be upheld in view of the rationale underlying our decision in *Baier v. State*, 197 Kan. 602, 419 P. 2d 865. In that case Baier, the petitioner, initiated proceedings under K. S. A. 60-1507 while he was a prisoner in the state penitentiary. Pending his appeal from an adverse decision of the trial court, Baier was released from the institution on parole, and the state thereupon contended his appeal had become moot.

In an opinion written by Justice O'Connor this court, after reviewing federal decisions construing both the federal habeas corpus statute (28 U. S. C. § 2241) and, the federal post conviction act (28 U. S. C. § 2255) rejected the contention advanced by the state, and held:

"A prisoner who institutes a K. S. A. 60-1507 proceeding, and is released on parole from the state penitentiary while his appeal from a denial of his motion by the district court is pending, remains in 'custody' within the meaning of the statute, and the questions presented are not thereby rendered moot." (Syl. ¶ 1.)

The state attempts to distinguish the present case from Baier. It also urges this court not to extend application of the Baier rule to a situation where "the petitioner is not confined, was not confined when he appealed and is merely serving out the terms of his parole." We fail to see any essential distinction between the Baier case and the case at bar. The controlling question in each case is this: When is a person "in custody" within the meaning of K. S. A. 60-1507 so as to be entitled to invoke the provisions of that statute by bringing proceedings thereunder?

In Baier we quoted from *United States v. Washington*, 341 F. 2d 277 (3d Cir., 1965) where the federal court held that restraints which were imposed by an order of probation following conviction and suspension of execution of sentence, was sufficient "custody" to enable a convicted defendant to seek relief under U. S. C. § 2255, and we applied the same rationale in defining "custody" within the intendment of our own post conviction statute.

While the instant case differs from Baier, in that Mr. Miller was probated by the sentencing court, rather than paroled from the penitentiary, we deem the difference to be artificial and wholly immaterial. The probation order in this case placed significant restraints on the petitioner's freedom.

Although he is not now behind cold steel bars, Mr. Miller nonetheless is prohibited, on pain of having his probation revoked and being committed to the penitentiary, from taking vacation trips and from going beyond a 50 mile radius of Fort Scott, except when attending bankruptcy court, traveling on business, or when authorized by his probation officer. He is required to abide by all rules and regulations of the State Board of Probation and Parole, to report to the board and probation officer, and to keep the latter advised of his home address. He must also pay court costs and apply twenty-five percent of his earnings to payment of checks (now doubtless discharged in bankruptcy). These, and other conditions set out in the order of probation are significant limitations upon the petitioner's liberty of action and constitute restraints upon his freedom which are not suffered by members of the public generally.

Inasmuch as the petitioner remains a probationer at this time, the period of probation having been extended to May 13, 1968, we hold that he is entitled to maintain this action for relief under K. S. A. 60-1507.

We turn now to the merits of the appeal. The petitioner's principal contention, although it is stated in various ways, boils down to the argument that the information does not charge him with a public offense. Accordingly, Mr. Miller maintains that the court which received his pleas of guilty had no jurisdiction to sentence him. In support of this position the petitioner contends that neither he nor his sisters are charged individually in the information, but that only the partnership is charged, separately and apart from the partners.

It may be conceded, as the trial court indicates in its memorandum, that the wording of the information is not as clear and concise as it might have been. The language to which the petitioner points as charging the partnership instead of the three partners are allegations "that . . . one CHARLOTTE HACKNEY, MAXINE HEREFORD and BLONN MILLER, partners d/b/a BANNER DAIRY PRODUCTS, Fort Scott, Kansas," did draw, make, utter, issue and deliver *their* certain checks to named payees, knowing *they* had no funds to pay the same, etc.

At first glance the petitioner's argument may seem to have a semblance of logic, but on second thought, and after more mature reflection, we find the construction he urges far too restrictive. The general rule we believe is accurately set out in 68 C. J. S. Partnership, § 182b, p. 637, where it is said:

"When a partnership is guilty of a crime, the partners should ordinarily be indicted as individuals, not as a firm, but they may be described as members of a partnership, or such description may be disregarded as surplusage. . . ."

In *State v. Powell,* 7 Lea 164 (Tenn.), the court said that an indictment against two named individuals, stating them to be partners trading under a firm name, would be treated as against the parties individually. To similar effect is *Rawls v. State,* 48 Tex. Cr. 622, 89 S. W. 1071, where the indictment charged "A & B, a firm" with violation of a statute. It was argued that this was simply an allegation that the firm had committed the violation, but the Texas court held otherwise, and said that the words "a firm" could be treated as surplusage.

Two other cases deserve mention. In *Schraubstadter v. United States,* 199 Fed. 568, the indictment charged the defendants as ". . . doing business . . . under the firm name and style of . . ." (p. 571.) The court said this language was merely descriptive and that the indictment would be regarded as of the individual members and not of the firm itself. The Alabama court in *Barnett et al. v. The State,* 54 Ala. 579, held that an indictment which charged the defendants as ". . . being members or partners of a private company or corporation . . ." (p. 580) was a direct and unambiguous charge against them as individuals.

Petitioner calls our attention to the fact that the statute in effect when he was charged, G. S. 1949, 21-554, read in this wise:

"It shall be unlawful for any person, corporation, or partnership, to draw, make, utter, issue or deliver to another any check or draft on any bank or de-

pository for the payment of money or its equivalent, knowing, at the time of the making, drawing, uttering or delivery of any such check or draft as aforesaid that he has no funds on deposit in or credits with such bank or depository with which to pay such check or draft upon presentation."

and that when the statute was amended in 1963 (L. 1963, Ch. 219, § 1, now K. S. A. 21-554) the words "corporation or partnership" were eliminated. It is argued this effected a substantial change in the statute, and so it did—for it would seem that now neither a partnership as such, nor a corporation as such, can be charged with a violation of the bad check law.

But it does not follow that partners and corporate officers could not be charged as individuals under the old act. As we view the former statute, either the partnership could be charged as a separate entity or the partners who comprised the partnership could be charged as individuals where the facts warranted such charges. Now, under the recent statute, corporate officers and individual partners may be prosecuted individually, but, apparently, not corporations or partnerships as such.

The petitioner argues, however, that a partner is not criminally responsible for the unlawful acts of his co-partners. This generally is true, in the absence of personal participation in the criminal act, unless a partnership engages in unlawful acts with the knowledge and consent of its members. (68 C. J. S. Partnership, § 182a, p. 637; 40 Am. Jur., Partnership, § 196, pp. 266, 267.)

The general rule can be of no avail to this petitioner, however, for he and his two sisters were jointly charged as principals with the issuance of all fifty-three checks, and the petitioner has long since pleaded guilty, as an individual, to all the charges, thereby acknowledging participation in the offenses. We have often said that a plea of guilty entered by a defendant is an admission of the highest order of his participation in the criminal act or acts charged. (*Perry v. State,* 200 Kan. 690, 438 P. 2d 83.)

A point was made at the evidentiary hearing of the petitioner's 60-1507 motion that the only check signed by Mr. Miller was delivered by him personally to General Mills at Kansas City, Missouri. The trial court found this evidence to be uncorroborated, but whether corroborated or not, we believe it is of little moment here. Passing the question of whether the petitioner's plea of guilty waived the issue of venue, there remained fifty-two other charges

of issuing bad checks to which Mr. Miller had pleaded guilty. As to those counts of the information no question of venue has even been suggested.

The petitioner suggests that his motion should be construed as an application to abate and that the court should have permitted an abatement. The trial court refused this contention, and rightly so. Under the provisions of G. S. 1949, 21-556, which was in force when the checks were written, a defendant charged with issuing worthless checks might have the action abated *before trial* by showing he had an account in the bank on which the checks were drawn within thirty days prior to their delivery, and by showing he had no intent to defraud the party receiving the same and by paying into court the amount of the checks and costs. That statute, however, was repealed by L. 1963, Ch. 219, § 7, and was no longer in effect when Miller's motion was heard. Furthermore, abatement under the old statute was possible only before trial, not afterward.

Other matters advanced by the petitioner as impugning the criminal proceedings had against him have been considered and are held to be without merit. Although this case has overtones of hardship and tragedy, we are constrained to hold that the judgment of conviction entered against petitioner is not shown to be invalid in any particular, and that the lower court's judgment must be upheld. It is so ordered.