No. 85,189

IN THE MATTER OF THE APPLICATION OF KATHY HORST, AND OTHER SIMILARLY SITUATED INDIVIDUALS, FOR A WRIT OF HABEAS CORPUS.

(14 P.3d 1162)

Opinion filed December 15, 2000.

*Sharon L. Dickgrafe*, assistant city attorney, argued the cause, and *Gary E. Rebenstorf*, city attorney, was with her on the briefs for appellant City of Wichita.

*Gary D. White, Jr.*, of Palmer, Leatherman & White, L.L.P., of Topeka, argued the cause, and *Kiehl Rathbun*, of Wichita, was with him on the brief for appellee Kathy Horst.

The opinion of the court was delivered by

LARSON, J.: In this appeal, the City of Wichita (City) challenges numerous orders issued by the trial court in a habeas corpus action concerning the legality and administration of an effort by the City to collect unpaid fines through labor in the Wichita Work Program. Kathy Horst, individually and on the claimed behalf of others similarly situated, questioned the City's actions. After a hearing, the trial court ordered the City to: (1) cease and desist collection efforts from anyone whose probation order was over 2 years old unless legally extended, (2) cease any attempt to place individuals in the Wichita Work Program for nonpayment of fines where probation has expired, (3) recall all warrants to arrest individuals who fail to appear on special "time-to-pay" dockets, and (4) pay Horst's attorney fees.

The City appealed. The case was transferred to the Supreme Court on our motion pursuant to K.S.A. 20-3018(c).

## Facts and proceedings

On November 15, 1999, Horst filed a petition for writ of habeas corpus, alleging that the Municipal Court of the City of Wichita lacked personal jurisdiction over her and others similarly situated. She alleged that she had been forced to appear on a time-to-pay docket at a time when she was not on probation from the confinement portion of any sentence that would allow for imposition of jail time as the result of the conviction. She alleged her required participation in the Wichita Work Program, which gave her credit toward fines and costs owed, constituted involuntary servitude, thereby violating her Thirteenth Amendment rights under the United States Constitution. Although the petition was stated to also relate to other similarly situated, individuals, no motion to certify the case as a class action was ever filed or pursued by the petitioner.

A writ was issued by District Judge Paul W. Clark directing the City to produce Horst and others similarly situated to the court on December 3, 1999.

The City, pursuant to K.S.A. 60-212(b)(6), moved to dismiss, contending it had no one in custody who could be produced, the petition failed to state a cause of action under K.S.A. 60- 1502, and the petition stated an insufficient factual basis upon which the writ could be issued.

At the hearing it was shown that in the summer of 1999, Wichita initiated a work program for people owing fines to the City. The program was created as an alternative to incarceration for people who failed to or were unable to pay the fines and costs assessed by the municipal court. The individuals ordered into the program would perform community service work such as picking up trash, painting, and cleaning, and received a $5 credit against outstanding amounts owed for every hour worked.

Individuals were ordered into the program by a municipal judge while appearing on the time-to-pay docket. The purpose of this docket was to secure a person's appearance at court with regard to payment of his or her fines and costs. A municipal judge testified individuals ordered to appear on the docket were not on probation.

Horst previously had been convicted of crimes and violations in the Wichita Municipal Court. On June 1, 1999, she appeared on the time-to-pay docket and was given a brochure describing the work program that stated: "If you do not appear for work after pledging to do so, or if you walk away from the program, a warrant will be issued for your arrest." The work was supervised by a City employee. Lunch was provided. Participants were given clothing and equipment if a particular task required such.

Horst's husband testified the judge informed them that attorneys were not allowed at the hearing. Mr. Horst testified that he explained to the municipal judge that his wife was unstable and unable to work. Kathy Horst has been diagnosed as having schizophrenia and manic depression and is on several medications. Nevertheless, she was ordered into the work program.

Horst said that after the first day, she was told by the program supervisor that she would be arrested if she did not continue to

come back. She worked from June 1, 1999, to June 25, 1999. She testified that at times she was elated because she believed she was going to be able to return to the work force but that at other times she felt humiliated and degraded. She testified the work caused her to abuse herself, including self-mutilation. Horst testified that she never reported these problems to her work program supervisor, although Mr. Horst stated he informed the supervisor she was having problems. All testimony was that there were no guards or guns present. It was also clear that she was never handcuffed or prohibited from leaving the job site. She discontinued appearing for the work program because she was hospitalized for a mental condition, which she alleges was due to the effects of being forced to work.

Horst testified that she had not participated in the program after late June 1999, and at the time of filing the petition for writ of habeas corpus she was in no way involved in the work program. At that time, she admitted to not being under any court order involving the work program and further admitted that no one had told her that she would be required to participate in the program at any future time. Horst admitted that when her petition was filed she resided at home and was free to come and go as she pleased.

Wichita Municipal Administrative Judge Julie Wright Connolly testified that the work program was, at the time of the hearing, completely voluntary pursuant to a temporary restraining order issued by Judge Clark on August 16, 1999, in a separate case. Her testimony was largely explanatory of municipal court procedure and involved hypothetical or generic parties and did not include any specifics as to the petitioner. Judge Connolly testified regarding the usage of the time-to-pay dockets for the purpose of obtaining payment of fines and court costs from persons convicted of traffic offenses who had been unable to pay, parties on probation ordered to pay, and parties whose reporting requirements were completed with the exception of unpaid fines. Judge Connolly stated that she had never issued a warrant or knew of any warrants being issued for individuals leaving the work program. She testified that accounts of unpaid fines could be "rolled to open," a term of art peculiar to the Wichita Municipal Court system which indicated

the municipal court was no longer involved and the collection was referred to civil collection practices.

Mark Kimple testified on behalf of Horst and said he had been placed into the work program involuntary for recently unpaid fines. He did not feel he had a choice but to work in the program on the first day. Horst never moved to join Kimple or any other parties to her suit.

Donald Porter, who supervised the work program, and his supervisor, Dennis Francis McHugh, both City employees, testified generally to the voluntary status of the program at the time of the hearing, the absence of arrests or warrants for people leaving, and the manner in which the daily work is performed.

After hearing the evidence, the court made findings of fact and issued the following orders:

"24. The City of Wichita is ordered to cease and desist all attempts to collect from individuals those certain fees incurred by court order in criminal cases as fines and court costs by issuing or causing to be issued any order by, from or out of the Municipal Court of the City of Wichita directed to the subject individuals in those cases where two (2) years or more have passed following the initial order of probation, unless the two year limitation has been legally extended.

"25. The City of Wichita is ordered to cease any and all attempts to have issued by its Municipal Court Judges orders placing individuals into the Wichita Work Program because of fees assessed for criminal cases in those cases where time of probation has expired.

"26. The City of Wichita is ordered to recall all warrants for the arrest of individuals based on their failure to appear in Municipal Court for the 'time-to-pay' docket.

"27. The City of Wichita is ordered to pay reasonable attorney fees for prosecution of this habeas corpus action."

## Contentions of the parties

The City raises nine issues. We will not discuss all of these in detail, but summarize them as follows: (1) Did the trial court have jurisdiction over the issues when the petitioner was not in custody or restrained by the City at the time the petition was filed? (2) Was the City the appropriate party to whom the writ should have been issued? (3) Does the trial court have legal authority to issue cease and desist orders in a habeas corpus proceeding? (4) Was petitioner's claim moot because she was no longer participating in the

work program when she filed the petition? (5) Did petitioner sustain her burden of proof that the City unlawfully restrained her? (6) Did the trial court have jurisdiction over other individuals in light of the fact no class action was ever certified by the court? (7) Is the Wichita Work Program a viable alternative to incarceration or is it in violation of the Thirteenth Amendment? (8) Does the Municipal Court lose jurisdiction over defendants after 2 years from the date probation was granted unless such probation had been extended? and (9) Are petitioner's attorneys entitled to attorney fees in this habeas corpus proceeding?

The petitioner, Kathy Horst, counters with the following contentions and arguments: (1) Wichita has no jurisdiction over her person or other similarly situated persons on the time-to-pay docket because the period of probation expired; they were never placed on probation; or probation was never extended by proper application, notice, and hearing. (2) The City's work program may not be imposed on a person released from probation and is not authorized by City ordinance or State statute. (3) The trial court has jurisdiction to consider Kathy Horst's petition. (4) Her petition is not moot, but even if moot, it should be reviewed because the City's actions are capable of repetition and are matters of public importance. and (5) The trial court had authority to order the City to cease and desist its improper jurisdiction over Kathy Horst and all other similarly situated persons and to award attorney fees.

## Standard of review

As to the issue of whether facts exist sufficient to enter a habeas corpus order, this is clearly a question of law over which our scope of review is unlimited. *Cypress Media, Inc. v. City of Overland Park,* 268 Kan. 407, 414, 997 P.2d 681 (2000). In addition, if the district court did not have jurisdiction to enter such an order, an appellate court does not acquire jurisdiction over the subject matter on appeal. *Board of Sedgwick County Comm'rs v. Action Rent to Own, Inc.,* 266 Kan. 293, 296, 969 P.2d 844 (1998).

## Arguments and authorities

In attacking the court's jurisdiction, the City's arguments center on the question of whether Horst was being restrained at the time

she filed her habeas corpus petition. Horst responds by contending that while she was not being physically restrained when her petition was filed, the City had not yet ordered her fines out to civil collection and therefore could attempt to collect by the use of time-to-pay dockets and orders to report to the work program at any time. She asserts such restraints are sufficient to justify habeas corpus.

The provision relating to granting of a writ of habeas corpus is set forth in K.S.A. 1999 Supp. 60-1501 as follows:

"[A]ny person in this state who is *detained, confined, or restrained of liberty on any pretense whatsoever*, . . . physically present in this state may prosecute a writ of habeas corpus in the supreme court, court of appeals or the district court of the county in which such restraint is taking place." (Emphasis added.)

The requirements of the petition are set forth in K.S.A. 1999 Supp. 60-1502, which states:

"The petition shall be verified and state: (1) The place where the person is restrained and by whom, (2) the cause or pretense of the restraint to the best of plaintiff's knowledge and belief, and (3) why the restraint is wrongful."

The City attempts to paint with a broad brush the concept that it did not have physical "custody" of Horst at the time the petition was filed, citing *Anderson v. Worden*, 744 F. Supp. 1042, 1043 (D. Kan. 1990). This contention is followed with the quote from *Kelly v. Kurtz*, 183 Kan. 684, 687, 331 P.2d 327 (1958), that "[i]n habeas corpus proceedings, the right of a petitioner to be released from custody depends entirely upon the validity of his restraint on the date of the filing of his petition. [Citation omitted.]"

The City then argues that the testimony showed that when the petition was filed, Horst was not in any way involved in the work program, was not subject to the time-to-pay docket or be affected by it in the future, and was under no restrictions as to her movements. Because the district court could only have jurisdiction over individuals who are "detained, confined or restrained of their liberty," no basis for a writ of habeas corpus exists.

The petitioner counters the City's arguments by contending that actual physical custody is not necessary for the issuance of a writ of habeas corpus and a writ may be properly issued if there is any

restraint on a person's liberty, citing 39 Am. Jur. 2d, Habeas Corpus § 17, p. 225; *Baier v. State*, 197 Kan. 602, 605-06, 419 P.2d 865 (1966).

Petitioner argues the City was exercising control over her through the use of time-to-pay dockets which included the continuing right to order her into the Wichita Work Program.

As might be expected, our early case law was quite strict as to the requirement of the petitioner's being in custody before a writ of habeas corpus was issued. In *The Territory, ex rel., v. Cutler*, 1 Kan. 565 (Dass ed. 1860), the petitioner had bonded out by the time the writ had been issued, and in reversing this grant, the court stated that the provision of the act contemplates a custody of the body and a restraint of the liberty of the person of the petitioner.

This ruling as to a person on bond not being under any restraint was followed in *In re Sills*, 84 Kan. 660, 662, 114 Pac. 856 (1911), but the definition of custody or parties under restraint has broadened significantly over the years. In *Baier v. State*, 197 Kan. 602, 419 P.2d 865 (1966), Baier was released on parole during the time his habeas corpus petition to vacate his judgment and sentence was pending. The State argued his appeal was moot because he was not "in custody" at the time of the appeal. Although the action was one under K.S.A. 60-1507, our opinion recognized the United States Supreme Court decision of *Jones v. Cunningham*, 371 U.S. 236, 242-43, 9 L. Ed. 2d 285, 83 S. Ct. 373 (1963), which held that a prisoner on parole was in "custody." We followed this reasoning in holding that Baier remained in custody while on parole and the questions raised were not moot. *Baier*, 197 Kan. at 604-06.

The *Baier* decision was followed by *Miller v. State*, 200 Kan. 700, 703-04, 438 P.2d 87 (1968) (order of probation imposes significant limitations on liberty of actions and constitutes restraint upon freedom sufficient to be entitled to K.S.A. 60-1507 action for relief), and *In re Habeas Corpus Petition of Mason*, 245 Kan. 111, 115, 775 P.2d 179 (1989) (habeas corpus relief proper as to individuals out on bail prior to trial). It thus appears that our modern view of custody and restraint is a far cry from earlier times. Martha Coffman, in her article *Habeas Corpus in Kansas: How is the Great Writ used today?* 64 J.K.B.A. 26, 27 (1995), states: "The phrase

'detained, confined or restrained' in K.S.A. 60-1501 should be liberally construed, citing as her authority *Hensley v. Municipal Court*, 411 U.S. 345, 36 L. Ed. 2d 294, 93 S. Ct. 1571 (1973), and *In re Berkowitz*, 3 Kan. App. 2d 726, 727 n.1, 602 P.2d 99 (1979).

When the foregoing authorities are applied to the facts of our case, it is apparent that Horst was, in a manner the City cannot refute, subject to its claimed but possibly improperly exercised jurisdiction at the time it ordered her to appear on the time-to-pay docket on June 1, 1999, and placed her in the Wichita Work Program. This constituted sufficient restraint for a writ of habeas corpus to have been issued at that time if such actions were improper or illegal as she now contends. This, however, is not the factual picture which we face because the City has acknowledged that at the time the petition was filed, and when the hearing was held, it had no right to subject Horst to any collection practices that could "detain, confine or restrain" her in any manner whatsoever. In addition, the uncontroverted testimony in the record is that the City was subject to a temporary restraining order dated August 16, 1999, in a separate case, *Reinschmiedt v. City of Wichita*, Sedgwick District case 99CO11312, whereby any involvement in the Wichita Work Program would be required to be voluntary. Any attempt of the City to bring Horst into the work program would subject it to a contempt citation. Horst was not detained, confined, or restrained so that a writ of habeas corpus could properly be issued.

These facts bring into issue the contention of the City that because petitioner's claims are moot she seeks an advisory opinion regarding the propriety of the City's work program and its time-to-pay docket. Horst claims her contentions are not moot because she still owes money to the City and, therefore, could, even though the City has admitted that it could not do so, attempt to exercise control and restraint over her at a future time. Horst's fallback argument is that even if we found her claims to be moot, we should nevertheless accept review because the actions of the City are subject to repetition and her petition is a matter of great public importance. Horst's argument is weakened by a record that is woefully lacking in specific testimony concerning any actual restraint as of the filing of her petition, and it can only justify action if we

give credence to her counsel's arguments as to what *might* be her fate given consideration of the City's prior improper actions.

The City's argument is centered on the statement of 39 Am. Jur. 2d, Habeas Corpus § 13, pp. 221-22: "A writ of habeas corpus will not be granted to determine a mere abstract or moot question. The writ is generally available only when the release of the prisoner from the detention he attacks will follow as a result of a decision in his favor."An earlier version of this identical Am. Jur. statement was cited with approval in *Martin v. Amrine*, 156 Kan. 384, 386, 133 P.2d 582 (1943).

Although other cases are cited by the City, the crux of its argument is set forth in our recent case of *Moorhouse v. City of Wichita*, 259 Kan. 570, 574, 913 P.2d 172 (1996), as follows:

> "A court has a duty only to decide actual controversies and will not give opinions upon moot questions or abstract propositions. A case will be dismissed as moot when it clearly and convincingly appears that the actual controversy has ceased and any judgment rendered in the case will be an idle act insofar as the rights involved in the action are concerned. See *City of Roeland Park v. Cross*, 229 Kan. 269, 270, 623 P.2d 1332 (1981)."

Petitioner offers the *Baier* case as authority for her contention that her habeas corpus is not moot where the City was using the time-to-pay docket to exercise control over her. See *Baier*, 197 Kan. at 604-06. This was an excellent argument concerning the City's actions on June 1, 1999, but it fails when applied to the evidence in the case and factual situation when the petition was filed on November 15, 1999.

Horst's argument that we should review her petition even if it is moot because it is an issue subject to repetition and a matter of great public importance pointed us to *Gibbons v. Brotherhood of Railway, Airline & Steamship Clerks*, 227 Kan. 557, 608 P.2d 1320 (1980), which relied on *Reece Shirley & Ron's, Inc. v. Retail Store Employees Union & Local 782*, 225 Kan. 470, 592 P.2d 433 (1979). The *Gibbons* case actually supports the City's position, as it held: "We do not deem it to be in the public interest for the court at this time to attempt to render an advisory opinion upon conflicting federal decisions and statutes when no actual controversy now exists." 227 Kan. at 558. The *Reece* case, however, does clearly sup-

port the petitioner's position, as it found that an issue involving union picketing might possibly be resumed and with no contract existing between the parties was an issue capable of repetition, yet evading review. 225 Kan. 471-72. See *Pauley v. Gross*, 1 Kan. App. 2d 736, 737-38, 574 P.2d 234 (1977), *rev. denied* 225 Kan. 845 (1978).

We are not prepared to attempt to render an opinion as to the legality or illegality of the Wichita Municipal Court Judges' actions in attempting to utilize various collection efforts or the time within which such actions are permissible. We limit our review of the actual evidence relating to a specific identified person, Kathy Horst, and not to any of the generic or hypothetical parties about which questions were asked and allowed to be answered.

While we are troubled by the actions of the Wichita Municipal Court Judges, we must limit our decision to precisely what actions, if any, were being inflicted upon Horst at the time the petition was filed. The answer to this question is clear and unequivocal. There were none.

Horst was not on November 15, 1999, listed on any time-to-pay docket; she had absolutely no involvement with the Wichita Work Program which at that time had become completely voluntary because of the court order in a companion case. There was no right on behalf of the City to in any manner detain, restrain, or confine her. In short, there was no basis for the trial court to issue the writ of habeas corpus, and the issues before this court are clearly moot and are not "capable of repetition, yet evading review."

This result is consistent with our holding in *Shanks v. Nelson*, 258 Kan. 688, 907 P.2d 882 (1995), a prisoner case which questioned regulations involving administrative segregation and whether a liberty interest was created. When Shanks was found to have been released and in Texas, we stated: "The actual controversy generating this case has ceased to exist, and any judgment entered would have no effect on the parties and would be an idle act insofar as rights involved in the action [are] concerned. [*City of Ottawa v.*] *Lester*, 16 Kan. App. 2d [244] at 245 [822 P.2d 72 (1991)]." 258 Kan. at 693.

With this result reached, we quickly resolve the remaining issues. No class was ever certified, and the result in this case is not binding upon any other party. Nor is there any right or basis for attorney fees in this case. The authority cited by Horst would not have justified attorney fees in any event.

The trial court is reversed.