NOT DESIGNATED FOR PUBLICATION

No. 116,342

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

NICHOLAS B. PIATT,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Harper District Court; LARRY T. SOLOMON, judge. Opinion filed April 28, 2017. Affirmed.

*Jess W. Hoeme*, of Joseph, Hollander & Craft LLC, of Wichita, for appellant.

*Janis I. Knox*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., GREEN and MCANANY, JJ.


*Per Curiam*: "[A]ny person in this state who is detained, confined or restrained of liberty on any pretense whatsoever" may file a petition for writ of habeas corpus. K.S.A. 2016 Supp. 60-1501. The petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). In 2008, Nicholas B. Piatt pled guilty to theft. Now, he is a police officer and alleges that he cannot advance in his career due to the fact that he was convicted of a crime of dishonesty. Piatt filed a K.S.A. 2016 Supp. 60-1501 petition in which he asked the district court to allow him to withdraw his guilty plea. His basis for withdrawing the plea is that his attorney was ineffective for failing to warn Piatt of the

1

collateral consequences of his plea. The district court held that it was without jurisdiction to consider Piatt's claim because Piatt was not detained, confined, or restrained of liberty as envisioned by K.S.A. 2016 Supp. 60-1501. Because the district court's analysis was correct, we affirm its decision dismissing Piatt's claim.

FACTUAL AND PROCEDURAL HISTORY

In 2006, Piatt and Dustin Stansbury drove onto the Anthony Golf Club course, causing property damage, and stole two animal traps. Piatt and Stansbury were both charged with criminal damage to property, obstruction of official duty, criminal trespass, and theft. The criminal trespass and theft counts were charged as misdemeanors for both men. The criminal damage to property and obstruction of official duty counts were charged as misdemeanors against Stansbury and as felonies against Piatt. Piatt pled guilty to all four counts, and in exchange the State agreed to amend the two felony counts to misdemeanors. The district court placed Piatt on probation for 2 years, ordered Piatt to pay certain costs and restitution, and ordered Piatt to serve 10 days in jail. Piatt's probation was terminated approximately 10 months later, as Piatt had satisfied the terms of the probation. Now, Piatt is a police officer with the Colwich Police Department. Piatt believes his theft conviction has obstructed his professional advancement.

Prosecutors have a duty to disclose impeachment evidence to the defense under *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), and *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Impeachment evidence includes evidence that a witness has been convicted of a crime of dishonesty, such as theft. Piatt alleges that he was denied a position at the Sedgwick County Sheriff's Department because it has a "de facto policy" of not hiring anyone on what it terms the *Brady*/*Giglio* list. This list was apparently established in 2014 by the Sedgwick County District Attorney's Office to comply with its discovery requirements under state and federal law. Although the policy indicates that the office takes no position on job

2

assignments or discipline of law enforcement officers who have impeachment information in their past (*i.e.*, crimes involving dishonesty), the office will not commence prosecution or request a warrant or summons based on an affidavit completed by anyone with such an impeachment history. Piatt does not address whether this is a common practice around the state or country or whether it is unique to Sedgwick County. Piatt also alleges that the Colwich Police Chief recently advised him that his conviction would result in termination from the Colwich Police Department.

Piatt filed a K.S.A. 2016 Supp. 60-1501 petition for writ of habeas corpus in which he requested that the district court permit him to withdraw his plea for the theft conviction. Piatt claims that his "plea was given without a clear understanding of the consequences of the plea or an explanation of the continuing effect that such a conviction for theft has caused." Piatt argued that allowing him to withdraw his plea was "the only potential means at law by which Piatt can be relieved of the shocking and intolerable continued restrained of his liberty imposed upon him by a plea and conviction to a crime of dishonesty when he was never so advised."

The district court summarily dismissed Piatt's K.S.A. 2016 Supp. 60-1501 petition. The court held that Piatt's request to withdraw his plea was untimely. The court also held that it was a condition precedent to both a K.S.A. 2016 Supp. 60-1501 petition and K.S.A. 2016 Supp. 60-1507 motion that the defendant be in custody and Piatt did not provide "concrete authority for his position that the facts of his case amount to legal detention, confinement, or restraint of liberty."

Piatt appealed.

ANALYSIS

Piatt argues that the district court erred by summarily dismissing his petition on the basis that Piatt was not in custody.

An appellate court exercises unlimited review of a summary dismissal of a K.S.A. 2016 Supp. 60-1501 petition. *Johnson*, 289 Kan. at 649. A K.S.A. 2016 Supp. 60-1501 petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." 289 Kan. at 648. Summary dismissal is proper "if, on the face of the petition, it can be established that petitioner is not entitled to relief, or if, from undisputed facts, or from uncontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists." 289 Kan. at 648-49.

K.S.A. 2016 Supp. 60-1501(a) provides in part that any person who is physically present in this state and "detained, confined or restrained of liberty on any pretense whatsoever . . . may prosecute a writ of habeas corpus in the supreme court, court of appeals or the district court of the county in which such restraint is taking place." Piatt's argument is that he is restrained of liberty because he cannot advance in his career as a law enforcement officer due to his theft conviction. This argument is not supported by the caselaw or Kansas' habeas corpus statutes.

Kansas' "early case law was quite strict as to the requirement of the petitioner's being in custody before a writ of habeas corpus was issued." *In re Habeas Corpus Application of Horst*, 270 Kan. 510, 517, 14 P.3d 1162 (2000). A person would have to be in prison to bring a petition for writ of habeas corpus. "[B]ut the definition of custody or parties under restraint has broadened significantly over the years." 270 Kan. at 517. Now, in addition to prisoners, the State considers persons on parole, under an order of probation, or out on bail prior to trial as "'detained, confined or restrained'" for the purposes of K.S.A. 2016 Supp. 60-1501. See 270 Kan. at 517-18. Individuals who have

been committed by the State, for example to a mental institution or to the Sexual Predator Treatment Program, can also bring K.S.A. 2016 Supp. 60-1501 claims. *In re Jones*, 228 Kan. 90, 104-05, 612 P.2d 1211 (1980) ("Should the chief medical officer of the state security hospital fail to perform his duties, the additional safeguard of a habeas corpus action, pursuant to K.S.A. 60-1501 *et seq.*, is available to the committed person whose rights are adversely affected thereby."); *Williams v. DesLauriers*, 38 Kan. App. 2d 629, 636, 172 P.3d 42 (2007) (holding that individuals civilly committed to Kansas' Sexual Predator Treatment Program were "confined" for the purposes of K.S.A. 60-1501).

The Kansas Supreme Court examined what it means to be restrained of liberty in *In re Horst*, 270 Kan. 510. There, Kathy Horst filed a K.S.A. 60-1501 petition to challenge a program used by the Municipal Court of the City of Wichita. In the summer of 1999, Wichita created a program called the Wichita Work Program in which people who owed fines to the City could perform community service work for a $5 per hour credit against outstanding amounts owed. Individuals would be "ordered into the program by a municipal judge while appearing on the time-to-pay docket." 270 Kan. at 512. This docket was intended to "secure a person's appearance at court with regard to payment of his or her fines and costs." 270 Kan. at 512. Individuals would be ordered to appear on the docket even if they were not on probation.

The Wichita Municipal Court ordered Horst, who owed fines to the city but was not on probation, to participate in the Wichita Work Program. A brochure provided by the court said: "'If you do not appear for work after pledging to do so, or if you walk away from the program, a warrant will be issued for your arrest.'" 270 Kan. at 512. Horst said that after the first day, a program supervisor told her she would be arrested if she did not return. Horst worked from June 1, 1999, to June 25, 1999. In August 1999, the City of Wichita was subject to a temporary restraining order that required any involvement in the Wichita Works Program to be voluntary.

5

In November 1999, Horst filed her K.S.A. 60-1501 petition arguing that her required participation in the Wichita Work Program constituted involuntary servitude in violation of her Thirteen Amendment rights under the United States Constitution. The Kansas Supreme Court held that Horst was restrained for the purposes of K.S.A. 60-1501 when the City of Wichita ordered her to appear on the time-to-pay docket in June 1999. 270 Kan. at 518. Even though the City did not have physical custody of Horst, the city restrained her freedom by telling her to appear at work or be arrested. However, Horst did not file her petition until November 1999 and at that time she was not "detained, confined, or restrained so that a writ of habeas corpus could properly be issued." 270 Kan. at 518. The court also found that the City's actions were not subject to repetition due to the temporary restraining order. 270 Kan. at 520.

The common thread throughout the caselaw on what it means to be "detained, confined, or restrained of liberty" is that the State acts in a way that limits the physical freedom of a person. See *Cosgrove v. Kansas Dept. of S.R.S.*, 14 Kan. App. 2d 217, 220, 786 P.2d 636 (1990) ("Most Kansas cases concerning liberty at least implicitly refer to physical liberty."). If Horst had not appeared at the Wichita Works Program after being ordered to do so, she could have been arrested—a restraint on her physical freedom. Similarly, prisoners, probationers, parolees, and others are considered detained, confined, or restrained of liberty because the State has the power to control their physical freedom. The State does not have any power to control Piatt's physical freedom. Piatt is not in actual physical custody of the State or subject to detention, confinement, or a restraint of liberty by order of the State.

The habeas corpus statutes also foresee that a petitioner will be in custody or subject to physical control. K.S.A. 60-1502(1) requires a petition to state "[t]he place where the person is restrained and by whom." Piatt's petition does not state the place where he is being restrained or a person who is restraining him because he is not being restrained. K.S.A. 2016 Supp. 60-1503(b) states that, if a court issues a writ, it "shall be

6

directed to the party having the person under restraint and shall command such person to have the restrained person before the judge at the time and place specified in the writ." Ordering the party in control to bring the restrained person before a judge presupposes that there is a party with physical control over the petitioner. Piatt is not under anyone's control—no one has the authority to bring Piatt before a judge.

Piatt does not cite any authority for his position that he is detained, confined, or restrained of liberty for the purposes of filing a K.S.A. 2016 Supp. 60-1501 petition. The caselaw and habeas corpus statutes, K.S.A. 60-1501 *et seq*., support the district court's conclusion that it did not have jurisdiction to grant the requested relief. If the district court did not have jurisdiction, neither do we. See *State v. McCoin*, 278 Kan. 465, 468, 101 P.3d 1204 (2004). Accordingly, we affirm the dismissal.

Affirmed.