1999 SD 77

**BRADY MEMORIAL HOME,**
**Employer and Appellant,**

**and**

**Presentation Sisters Workers'**
**Compensation Trust, Self-**
**Insurer and Appellant,**

**v.**

**Irene M. HANTKE, Claimant**
**and Appellee.**

**No. 20834.**

Supreme Court of South Dakota.

Considered on Briefs June 1, 1999.

Decided June 23, 1999.

Michael S. McKnight and Lisa Hansen Marso of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for employer, self-insurer and appellants.

Bradley G. Bonynge and Renee Christensen of Bonynge & Christensen, Sioux Falls, for claimant and appellee.

MILLER, Chief Justice.

[¶ 1.] In this appeal we hold that a worker's compensation claimant failed to establish that her employment was a major contributing cause of her injury. The South Dakota Department of Labor originally denied Irene Hantke's claim for workers' compensation benefits. The circuit court reversed Department's decision and Brady Memorial Home and its insurer, Presentation Sisters Workers' Compensation Trust (collectively referred to as Brady Home), appeal. We reverse.

## FACTS

[¶ 2.] On March 21, 1996, while working as a registered nurse at Brady Home, Hantke experienced back pain when she bent to retrieve a jar of medication from the bottom of a medicine cart. She continued to work the remainder of her shift even though she was experiencing discomfort. Later, at approximately 3:00 a.m., she was awakened by what she described as searing pain in her back, which caused her to seek treatment that morning at the emergency room of the local hospital. The emergency room X-rays showed a lumbosacral degenerative disc[1] and facet changes in her back.

[¶ 3.] Following her emergency room visit, she began treating her condition with her family physician, Dr. Martin Christensen, who diagnosed her condition as a lum-

---

1. Dr. Christensen, Hantke's physician, explained in his deposition testimony that a degenerative disc is something that generally occurs with age, and that Hantke's degenerative disc was located at L5–S1, the lowest region of the low back area.

bosacral strain[2] with a possible herniated disc. Hantke underwent an MRI test, which Dr. Christensen believed showed degenerative changes at two lower lumbar levels and broad-based disc herniation at the L4–5 and L5–S1 levels.[3]

[¶ 4.] Hantke also submitted to two independent medical examinations. On June 18, 1996, Dr. John Dowdle, a certified orthopedic surgeon, examined her and diagnosed her as having mechanical low back pain, degenerative disc changes at L4–5 and L5–S1, and sacroiliac joint inflammation on the right side.[4] Eight days later, Dr. Quentin Durward, a licensed neurosurgeon, examined Hantke and determined that she had a right-sided disc herniation and trochanteric bursitis.[5] Prior to making their diagnoses, both doctors obtained a medical history from Hantke and reviewed her X-ray and MRI films.[6]

[¶ 5.] Hantke continued to consult with Dr. Christensen, who indicated in his June 19, 1996 records that the herniated disc had been resolved and that her condition continued to improve. Even when Hantke reinjured her back in March 1997, Dr. Christensen's records indicate that, by the time of her return visit on April 28, Hantke had returned to work at Brady Home and that her condition continued to improve.

[¶ 6.] However, while at home on or about May 10, 1997, Hantke again injured her back. She claims that when she shift-ed her weight while standing at the kitchen sink she experienced severe pain, which she likened to being hit in the back with a hammer. She contacted Dr. Christensen, who referred her to an orthopedic surgeon. On May 19 the surgeon performed a microdiscetomy at L5–S1.

[¶ 7.] Brady Home paid temporary workers' compensation benefits to Hantke for the March 21, 1996 incident. However, it denied liability for the May 10, 1997 incident and the subsequent surgery for her herniated disc. When Brady Home petitioned Department regarding Hantke's benefit claim, Department found that, because Hantke failed to prove by a preponderance of the evidence that her employment was a major contributing cause of her herniation, her injury was not compensable. Hantke appealed Department's decision and the trial court reversed. Brady Home appeals.

### STANDARD OF REVIEW

 [¶ 8.] Our standard of review in workers' compensation cases is well settled. We are required to give "great weight to the findings and inferences made by Department on factual questions." *Wagaman v. Sioux Falls Constr.*, 1998 SD 27, ¶ 12, 576 N.W.2d 237, 240 (citing *Sopko v. C & R Transfer Co., Inc.*, 1998 SD 8, ¶ 6, 575 N.W.2d 225, 228 (citations omitted)). "Under SDCL 1–26–37, when the issue is a question of fact, then the clearly erroneous

2. Lumbosacral strain refers to a strain of the ligaments between the lumbar spine and the sacrum.

3. In his deposition testimony, Dr. Christensen testified that the L5–S1 is the lowest area in the back, the vertebrae right before the sacrum (tailbone).

4. Dr. Dowdle described degenerative disc disease as the drying of a disc, generally through aging, that causes pain. He likened it to a dried up shock absorber. He stated that mechanical low back pain—a pain at the lower portion of the back when an individual sits or stands too long, or bends too much—is a manifestation of degenerative disc disease.

5. Trochanteric bursitis refers to the inflammation of a bursita, a covering that protects the muscles in the hip bone and pelvis areas.

6. The record establishes that Hantke slipped and fell in July 1995 and suffered an injury of her tailbone, which caused her to miss several shifts of work. She sought chiropractic treatment for this injury eleven times during July, August, and September 1995. Moreover, the record establishes that she failed to reveal any information about this injury to Dr. Christensen. Hantke claims she informed Dr. Durward, but his record of her prior medical history is contrary to that claim. Dr. Durward stated in his deposition testimony that he was unaware of any previous back injury.

standard is applied to the agency's findings; however, when the issue is a question of law, the actions of the agency are fully reviewable." *Id.* (citing *Loewen v. Hyman Freightways, Inc.,* 1997 SD 2, ¶ 6, 557 N.W.2d 764, 766 (citations omitted)). "If after careful review of the entire record we are definitely and firmly convinced a mistake has been committed, only then will we reverse." *Sopko,* 1998 SD 8, ¶ 6, 575 N.W.2d at 228 (citations omitted). In addition, "we review findings based on deposition testimony and documentary evidence under a de novo standard of review." *Wagaman,* 1998 SD 27, ¶ 12, 576 N.W.2d at 240 (citation omitted).

## DECISION

[¶ 9.] **Hantke failed to establish that her employment was a major contributing cause of her injury.**

[¶ 10.] Hantke has the burden of proving, by a preponderance of the evidence, "all the facts essential to compensation." *Westergren v. Baptist Hosp.,* 1996 SD 69, ¶ 10, 549 N.W.2d 390, 393 (citations omitted). Although Department made no specific finding as to whether Hantke's herniated disc arose out of and in the course of her employment, it concluded that she "failed to show by a preponder-

ance of the evidence that her employment was a major contributing cause of her disc herniation." Therefore, it held that her injury was not compensable. We agree.

[¶ 11.] Hantke must establish the "causal connection between [her] injury and [her] employment." *Maroney v. Aman,* 1997 SD 73, ¶ 9, 565 N.W.2d 70, 73 (citing *Caldwell v. John Morrell & Co.,* 489 N.W.2d 353, 357 (S.D.1992)). In addition, South Dakota law requires her to establish *by medical evidence* that the "employment or employment conditions are a major contributing cause of the condition complained of[.]" SDCL 62–1–1(7).[7] " '[A] possibility is insufficient and a probability is necessary.' " *Maroney,* 1997 SD 73, ¶ 9, 565 N.W.2d at 73 (quoting *Caldwell,* 489 N.W.2d at 358 (citation omitted)).

[¶ 12.] To determine if Hantke has established by a preponderance of the medical evidence that her employment was a major contributing cause of her herniated disc, we must examine the medical testimony, which includes the deposition testimony of Drs. Christensen, Durward, and Dowdle.

[¶ 13.] Dr. Christensen testified that he was unaware of Hantke having experienced any back pain prior to the March 21,

---

7. Prior to its amendment in 1995, SDCL 62–1–1(7) provided the definition for "injury" or "personal injury" as "only injury arising out of and in the course of the employment, and shall not include a disease in any form except as it shall result from the injury." This Court "disavowed a strict interpretation" of the definition. *See Howell v. Cardinal Indus.,* 497 N.W.2d 709, 711 (S.D.1993). However, the clear language of the 1995 amendment no longer allows for such a liberal interpretation of the statute. The 1995 amendment changed the statute to read as follows:

(7) "Injury" or "personal injury," only injury arising out of and in the course of the employment, and does not include a disease in any form except as it results from the injury. An injury is compensable only if it is established by medical evidence, subject to the following conditions:

(a) No injury is compensable unless the employment or employment related activ-

ities are a major contributing cause of the condition complained of; or

(b) If the injury combines with a preexisting disease or condition to cause or prolong disability, impairment or need for treatment, the condition complained of is compensable if the employment or employment related injury is and remains a major contributing cause of the disability, impairment or need for treatment.

(c) If the injury combines with a preexisting work related compensable injury, disability, or impairment, the subsequent injury is compensable if the subsequent employment or subsequent employment related activities contributed independently to the disability, impairment or need for treatment.

The provision was again amended in 1999, but such amendment is not material to the issue before us.

1996 incident.[8] Therefore, he believed Hantke's employment contributed to her condition. However, he was unable to identify which of three causes—employment, weight, or age—was a greater contributing cause.

[¶ 14.] Dr. Durward also attributed Hantke's back pain and small right-sided herniation to the March 21 work incident. He stated that Hantke's medical history was the basis for his opinion and that her lack of any prior back injuries or problems was significant. However, he, like Dr. Christensen, was unaware of Hantke's July 1995 injury. Moreover, he failed to specifically state whether Hantke's employment was a major contributing cause of her condition.

[¶ 15.] Dr. Dowdle also testified regarding Hantke's condition. He stated that Hantke's work, specifically the March 21 incident, was not a major contributing cause of her condition or her need for the microdiscetomy. He also indicated that disc herniation was not evident on the MRI films he viewed prior to his examination of Hantke, and that no relationship existed between the March 21 incident at work and the May 10, 1997 incident at Hantke's home. He further testified that, according to the surgeon's reports, the disc material that was surgically removed from Hantke's back was calcified and hard, indicating the material was of a long-standing duration of approximately five to ten years.

[¶ 16.] Hantke claims that the deposition testimony of Dr. Christensen and Dr. Durward supports her claim that her employment at Brady Home was a major contributing cause of her injury. However, after reviewing the doctors' deposition testimony and the evidence, we disagree. We recognize that Hantke's " '[p]roof need not arise to a degree of absolute certainty; [however], an award may not be based upon mere possibility or speculative evidence.' " *Kester v. Colonial Manor,* 1997 SD 127, ¶ 24, 571 N.W.2d 376, 381 (quoting *Hanten v. Palace Builders, Inc.,* 1997 SD 3, ¶ 15, 558 N.W.2d 76, 80 (citation omitted)).

[¶ 17.] The evidence here establishes, at best, a *possibility.* Only Dr. Dowdle provided an unequivocal opinion of whether Hantke's employment was a major contributing cause of her condition; *he stated that it was not.* In addition, Dr. Christensen and Dr. Durward based their diagnoses and opinions on the belief that Hantke had suffered no previous injuries or problems. *See Hanten,* 1997 SD 3, ¶ 10, 558 N.W.2d at 78 (stating "expert testimony is entitled to no more weight than the facts upon which it is predicated"). Therefore, their opinions provide nothing more than speculative evidence, which is inadequate to meet Hantke's burden. Accordingly, we find no error in Department's decision and conclude that the trial court erred in reversing it.

[¶ 18.] We reverse and remand to the circuit court with directions that it enter an order consistent with this decision.

[¶ 19.] AMUNDSON, KONENKAMP and GILBERTSON, Justices, concur.

[¶ 20.] SABERS, Justice, deeming himself disqualified, did not participate.

---

8. Hantke failed to notify him of a July 1995 fall that caused her to seek treatment with a chiropractor for three months and to miss several shifts of work.