2000 SD 36

**Edna K. STEINBERG, Claimant and Appellant,**

v.

**SOUTH DAKOTA DEPARTMENT OF MILITARY AND VETERANS AFFAIRS, Employer, Insurer and Appellee.**

**No. 21101.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 2000.

Decided March 15, 2000.

Patricia A. Meyers and Donald A. Porter of Costello, Porter, Hill, Heisterkamp and Bushnell, Rapid City, for claimant and appellant.

Timothy M. Engel of May, Adam, Gerdes and Thompson, Pierre, for employer, insurer and appellee.

GILBERTSON, Justice

[¶ 1.] Edna K. Steinberg (Steinberg) appeals the circuit court's order dismissing her claim for workers' compensation benefits pursuant to SDCL 62–1–1(7). We reverse.

## FACTS AND PROCEDURE

[¶ 2.] The material facts of this case are undisputed. At the time of Steinberg's injury, she was employed at Camp Rapid in Rapid City, South Dakota. Camp Rapid is administered by the Department of Military and Veteran's Affairs of the State of South Dakota (DMVA). She had fixed hours of employment from 7:00 a.m. to 4:00 p.m., with an unpaid lunch break from 12:00 p.m. to 1:00 p.m. On March 3, 1997, shortly after 12:00 p.m., Steinberg left her office during her lunch period. She was free to leave the base as there was nothing about her duties that required her to stay over the lunch hour. She planned to walk to where her car was parked between Buildings 703 and 704 of the camp, and then drive over to her husband's workplace, also at Camp Rapid. Steinberg's office was located in Building 603 of the camp, and as she stepped onto the road between Building 603 and Building 703, she slipped and fell on some "black" ice.

[¶ 3.] It had begun snowing at approximately 9:00 a.m. that morning. Snowplows had cleared the street in front of Building 603 approximately one hour before Steinberg's accident. However, the road was neither sanded nor salted. The roads contained within the confines of Camp Rapid are generally open to the public and were so on the day of the injury.

[¶ 4.] When Steinberg fell to the ground, her head hit the asphalt, and she was knocked unconscious for approximately one minute. Within ten minutes of the fall, Steinberg began to feel dizzy, experience lower back pain and pain around her neck and shoulders. She immediately sought medical attention. On March 4, 1997 Steinberg timely informed her supervisor of her injury. Steinberg subsequently sought treatment through physical therapy; however, it did not seem to help her shoulder and neck pain. She was then referred to Dr. Seljeskog, who had MRI's taken and discovered two discs in her neck were out of alignment. Steinberg underwent surgery to have the two discs removed.

[¶ 5.] DMVA denied liability for Steinberg's injury. Steinberg brought a claim for workers' compensation benefits before the Department of Labor (Department). The Department entered its decision and an order and findings of fact and conclusions of law on June 2, 1998, finding Steinberg as a matter of law, had sustained a compensable injury arising out of and in the course of her employment with DMVA. DMVA subsequently appealed to the Hughes County Circuit Court. The circuit court ruled the Department had applied the incorrect test for the "arising out of" element of SDCL 62–1–1(7), and that the 1995 amendment to the statute required an injury arise out of the employment by a "major contributing cause." Thus, the circuit court remanded the case back to the Department. The Department applied the circuit court's standard and found Steinberg's injury arose out of her employment under this standard as well. Upon DMVA's second appeal to circuit court, the court reversed the Department's ruling dismissing Steinberg's claim in its entirety. Steinberg appeals, raising the following issues for our consideration:

1. Whether SDCL 62–1–1(7) requires a workers' compensation claimant to prove, by a standard of "major contributing cause," that an injury arose out of employment.

2. Whether Steinberg's injury arose out of her employment as a matter of law.

## STANDARD OF REVIEW

[¶ 6.] In this case we are presented with the statutory interpretation of the

1995 amendments to SDCL 62–1–1(7). It is well settled that "[s]tatutory interpretation presents a question of law reviewable de novo." *Zoss v. Schaefers,* 1999 SD 105, ¶ 6, 598 N.W.2d 550, 552 (citing *Satellite Cable Srvs. v. Northern Electric,* 1998 SD 67, ¶ 5, 581 N.W.2d 478, 480). When reviewing the construction of a statute, "we interpret statutes in accord with legislative intent." *Welsh v. Centerville Township,* 1999 SD 73, ¶ 7, 595 N.W.2d 622, 624 (quoting *McIntyre v. Wick,* 1996 SD 147, ¶ 51, 558 N.W.2d 347, 362 (citing *Fall River County v. South Dakota Dept. of Revenue,* 1996 SD 106, ¶ 13, 552 N.W.2d 620, 624)).

## ANALYSIS AND DECISION

[¶ 7.] **1. Whether SDCL 62–1–1(7) requires a workers' compensation claimant to prove, by a standard of "major contributing cause," that an injury arose out of employment.**

[¶ 8.] Steinberg argues the circuit court erroneously interpreted the definition of "injury" contained in SDCL 62–1–1(7) as amended in 1995. The circuit court construed SDCL 62–1–1(7)(a) in such a way that the term "major contributing cause" modifies the phrase "injury arising out of" the employment. The circuit court stated in its oral bench ruling, incorporated by reference in the circuit court's conclusions of law "it's my judgment that the major contributing cause language was intended by the Legislature to substantially increase the causal connection that is required to be proven under the 'arising out of' test imposed by the statute." The circuit court also found the "major contributing cause" language poses an even stricter standard than the tort-based concept of proximate cause in proving the employment caused the employee's injury. Steinberg argues the circuit court erred in its interpretation in that SDCL 62–1–1(7)(a) only applies to the degree of medical proof required to show the employment-related injury produced a "condition." Steinberg claims the circuit court treated the word "condition" as synonymous with the word "injury." We find the circuit court erred in its interpretation of this statute and we do not agree that the "major contributing cause" language in the statute was meant to raise a claimant's standard of proof of a work-related injury similar to or above the fault-based tort concept of proximate cause.

[¶ 9.] In addressing this issue, we strive to delineate the scope of legislative intent in amending SDCL 62–1–1(7). Prior to its amendment in 1995, SDCL 62–1–1(7) provided the definition for "injury" or "personal injury" as "only injury arising out of and in the course of the employment, and shall not include a disease in any form except as it shall result from the injury." *Brady Memorial Home v. Hantke,* 1999 SD 77, ¶ 11, 597 N.W.2d 677, 680 n. 7. In 1995, the legislature twice amended the workers' compensation law to add the relevant language of "major contributing cause." The result of those amendments is codified in SDCL 62–1–1(7)(a), (b) and (c). SDCL 62–1–1(7) provides:

(7) "Injury" or "personal injury," only injury arising out of and in the course of the employment, and does not include a disease in any form except as it results from the injury. An injury is compensable only if it is established by medical evidence, subject to the following conditions:

(a) No injury is compensable unless the employment or employment related activities are *a major contributing cause* of the condition complained of; or

(b) If the injury combines with a preexisting disease or condition to cause or prolong disability, impairment, or need for treatment, the condition complained of is compensable if the employment or employment related injury is and remains a major contributing cause of the disability, impairment, or need for treatment; and

(c) If the injury combines with a preexisting work related compensable injury, disability, or impairment, the subsequent injury is compensable if the subsequent employment or subsequent employment related activities contributed independently to the disability, impairment, or need for treatment. (emphasis added).

DMVA contends the amendments were intended to narrow the scope of compensable injuries, and require a significant causal link between an employee's actual work function and the injury, i.e., the "employment" or "employment related activities" must be a "major contributing cause" of the injury.

[¶ 10.] We do not agree with DMVA. First, inherent in DMVA's argument is that the employment or employment-related activities must be a major contributing cause of the employee's "injury;" here, Steinberg's fall. However, the legislature did not use the word "injury" in this specific provision of the 1995 amendments to subsection (a); instead, it used the words "condition complained of." We interpret that phrase to mean the resulting condition; i.e., the medical condition that resulted from the employment incident. Subsection (a) begins "[n]o injury is compensable ..." Surely if the legislature had wanted to insert the word "injury" after "major contributing cause," it would have done so. Instead, it chose to use the words "condition complained of." We do not assume the legislature intended to use "condition" synonymous with the word "injury" in the same sentence. In arriving at the intention of the legislature it is presumed that the words of the statute have been used to convey their ordinary, popular meaning. *National Farmers v. Universal,* 534 N.W.2d 63, 65 (S.D.1995) (citing *Oahe Conservancy Subdistrict v. Janklow,*

308 N.W.2d 559, 561 (S.D.1981)). Indeed, " 'injury' is the ... act or omission which caused the loss." *Rosnick v. Marks,* 218 Neb. 499, 357 N.W.2d 186, 190 (1984). "Condition," in contrast, is the loss produced by some injury; i.e., it is the *result* rather than the cause. The word "condition" means "state of being." *Doyle v. Superior Court,* 50 Cal.App.4th 1878, 58 Cal.Rptr.2d 476, 481 (1996).[1] *See also Reis v. Cox,* 104 Idaho 434, 660 P.2d 46, 50 (1982) (noting "condition or matter complained of" was found to be plaintiff's status as having a foreign object left in her after surgery).

[¶ 11.] The new definition of "injury" in SDCL 62–1–1(7) retains the phrase "only injury arising out of and in the course of employment." By leaving this phrase intact, the legislature intended it to retain the standard for proving when an employment related injury occurred. The addition of the entirely new section "[a]n injury is compensable only if it is established by medical evidence, subject to the following conditions ...," applies only to the quantum of proof necessary to prove the resulting condition complained of from the employment related incident.

[¶ 12.] We do not believe the legislature intended to include two standards of causation—something in excess of proximate cause and "arising out of"—that would directly contradict each other. "It is presumed that the legislature intended provisions of an act to be consistent and harmonious." *Matter of Northwestern Public Service Co.,* 1997 SD 35, ¶ 14, 560 N.W.2d 925, 927 (citing *State v. Chaney,* 261 N.W.2d 674 (S.D.1978)). "It is also presumed that the legislature did not intend an absurd or unreasonable result." *Id.* (citing *Applications of Black Hills Power and Light Co.,* 298 N.W.2d 799 (S.D.1980)). The legislature certainly

---

1. DMVA argues that the amendments to SDCL 62–1–1(7) created an ambiguity. Thus, if this Court determines the statute is ambiguous, "all ambiguity should be liberally construed in favor of [the] injured employee[ ]." *Nilson v. Clay County,* 534 N.W.2d 598, 601 (S.D.1995) (citing *Caldwell v. John Morrell & Co.,* 489 N.W.2d 353, 364 (S.D.1992) (citing *Mills v. Spink Elec. Co-op.,* 442 N.W.2d 243 (S.D.1989))).

could have removed the phrase "arising out of" and instead defined injury in SDCL 62–1–1(7) with one sentence "only injury of which the employment is a major contributing cause," and left it at that. However, the legislature instead chose to leave "arising out of" in the statute, and added the requirement that the resulting condition from the injury must be established with medical evidence and the additional subsections. "The legislature does not intend to insert surplusage in its enactments." *National Farmers*, 534 N.W.2d at 65 (citing *Revier v. School Bd. of Sioux Falls*, 300 N.W.2d 55, 57 (S.D.1980)).

[¶ 13.] It also seems clear from subsections (b) and (c) that the legislature was concerned with claimant's being able to prove their medical conditions, whether they be caused by the work-related incident, or combined with a preexisting disease or condition. "A statute must be read as a whole and effect must be given to all its provisions." *Id.* (citing *Beitelspacher v. Winther*, 447 N.W.2d 347, 351 (S.D.1989); *Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292, 295 (S.D.1982) and *State v. Heisinger*, 252 N.W.2d 899, 903 (S.D.1977)). The harmonious interpretation here is to read the new phrase "major contributing cause" to apply only to the requirement of proving the "condition complained of."

■ [¶ 14.] Although SDCL 62–1–1(7) was amended in 1995, the overall statutory

determination was left intact that workers' compensation is the exclusive remedy against employers for all on-the-job injuries to workers except those injuries intentionally inflicted by the employer. SDCL 62–3–2;[2] *Harn v. Continental Lumber Co.*, 506 N.W.2d 91, 95 (S.D.1993). To now find that the legislature has raised the element of the employment's connection to an injury to a standard higher than proximate cause or the "arising out of" standard, would be at best to essentially repeal South Dakota's no fault workers' compensation act in favor of a new statutory administrative fault-based tort system, and to repudiate all the goals and purposes the act intended to address. At its worst it would act as an absolute bar to recovery by workers against their employers injured on the job who cannot establish employer fault under the test advocated by DMVA. These workers would be denied workers' compensation under this standard and would be denied the right to sue in tort by SDCL 62–3–2.[3] "Compensation acts are sui generis, and care must be taken not to defeat their purpose by applying, through long judicial habit, concepts belonging to fundamentally different fields of litigation." *Olson v. Trinity Lodge No. 282*, 226 Minn. 141, 32 N.W.2d 255, 257 (1948) (citing *Hanson v. Robitshek–Schneider Co.*, 209 Minn. 596, 297 N.W. 19 (Minn.1941)).

■ [¶ 15.] When one interpretation "would functionally annul the law, the car-

2. SDCL 62–3–2 states:
   The rights and remedies herein granted to an employee subject to this title, on account of personal injury or death arising out of and in the course of employment, shall exclude all other rights and remedies of such employee ... on account of such injury or death against his employer or any employee, partner, officer or director of such employer, except rights and remedies arising from intentional tort.

3. In her appellate brief, Steinberg briefly touches on the potential due process argument inherent in this issue. The legislature's passage of the 1917 Workers' Compensation Act abolished workers' rights to sue their employers in tort to recover for workplace inju-

ries. Steinberg argues such an abolishment could only have been constitutional under due process if the state provided, in return, easy access to compensation as a quid pro quo or commensurate benefit. Steinberg argues to now construe SDCL 62–1–1(7) to abandon this quid pro quo benefit would constitute a violation of due process, and should be construed to avoid such a result. Because of our resolution of this issue on statutory grounds we need not address this constitutional argument. Moreover, the record does not reflect Steinberg made the due process argument to the trial court nor does it appear she gave the Attorney General proper notice of bringing a due process constitutional claim. SDCL 15–6–24(c).

dinal purpose of statutory construction – ascertaining legislative intent – ought not be limited to simply reading a statute's bare language; we must also reflect upon the purpose of the enactment; the matter sought to be corrected and the goal to be attained." *DeSmet Ins. of South Dakota v. Gibson*, 1996 SD 102, ¶ 7, 552 N.W.2d 98, 100 (citations omitted). We stated the general purpose and goal of workers' compensation law in *Keil v. Nelson*, 355 N.W.2d 525 (S.D.1984):

> The general purposes of workmen's compensation legislation, therefore, is the substitution in place of the doubtful contest for a recovery based on proof of the employer's negligence and the absence of the common law *defenses of a right for the employees to relief based on the fact of employment, practically automatic and certain, expeditious and independent of proof of fault* and for the employers a liability which is limited and determinate.

*Id.* at 530. (emphasis added). The danger in accepting the circuit court's interpretation of SDCL 62–1–1(7) is that it moves the standard of proving a compensable work-related injury similar to, or even exceeding, the tort requirements of proximate cause. Professor Larson has commented in great detail concerning why proximate cause has no place in workers' compensation law. "[P]roximate cause or legal cause is out of place in compensation law because, as developed in tort law, it is a concept that is itself thoroughly suffused with the idea of fault; that is, it is a theory of causation designed to bring about a just result when starting from an act containing some element of fault." 1 Larson's Workers' Compensation Law § 3.06, at 3–8. Professor Larson has also stated:

> It is instantly apparent that "arising out of the employment" does not mean exactly the same thing as "legally caused by the employment." It is true, as many courts and writers have said, that "arising" has something to do with causal connection; but there are many shades and degree of causal connection, of which "legal" or "proximate" cause is only one.

*Id.* at 3–7. "Active physical causation by the surroundings is not required in order to satisfy what is implied by the expression 'arising out of the employment.'" *Id.* at 3–7 to 3–8 n 5.

[¶ 16.] Our case law has stated a claimant must establish a causal connection between the injury and the employment. *Brady*, 597 N.W.2d at 680 (citing *Maroney v. Aman*, 1997 SD 73, ¶ 9, 565 N.W.2d 70, 73 (citing *Caldwell*, 489 N.W.2d at 357)). In *Brady*, we addressed the compensability of a herniated disc that could have been due either to a personal predisposing condition, work-related factors, or a combination of both. We observed: "Hantke must establish the 'causal connection between [her] injury and [her] employment.'" *Brady*, 1999 SD 77, ¶ 11, 597 N.W.2d at 680 (citing *Maroney*, 1997 SD 73, ¶ 9, 565 N.W.2d at 73 (citing *Caldwell*, 489 N.W.2d at 357)). This Court then stated "*[i]n addition*, South Dakota law requires her to establish *by medical evidence* that the 'employment or employment conditions are a major contributing cause of the condition complained of[.]'" *Id.* (citing SDCL 62–1–1(7)). (emphasis added).

[¶ 17.] We have also stated "employment need not be the direct or proximate cause of injury ..." *Walz v. Fireman's Fund Ins. Co.*, 1996 SD 135, ¶ 17, 556 N.W.2d 68, 73. In *Anderson v. Hotel Cataract*, 70 S.D. 376, 17 N.W.2d 913, 916 (1945), we stated: "[i]t is apparent that the new standard, 'arising out of and in the course of employment' does not require that the latter be the proximate cause of injury. If the legislature had meant that, it would have said so." Thus, we must assume the legislature was aware of this standard for "arising out of" when it amended SDCL 62–1–1(7).

[¶ 18.] We find the legislature did not intend to increase the causal connection that is required to prove an injury arose out of the employment, but rather intend-

ed to raise the degree of proof required to show the condition complained of by the employee. We hold the "arising out of" standard still applies in proving an injury is related to employment.

**[¶ 19.] 2. Whether Steinberg's injury arose out of her employment.**

[¶ 20.] As there is no question of fact, the resolution of this issue becomes a matter of law for this Court. The circuit court recognized and DMVA conceded, Steinberg's injury occurred "in the course of" her employment because it occurred during her lunch break. Under our prior case law, there can be no question Steinberg's injury may be compensable even though it occurred during her lunch hour.[4] *See Piper v. Neighborhood Youth Corps,* 90 S.D. 443, 241 N.W.2d 868, 869 (1976); *Krier v. Dick's Linoleum Shop,* 78 S.D. 116, 98 N.W.2d 486 (1959). However, the circuit court, applying the much higher standard of "major contributing cause," found that Steinberg's injury did not arise out of her employment because the injury did not arise out of a risk inherent to her employment. Rather, DMVA argues and the circuit court held, "[Steinberg's] injury occurred as a result of the exposure to a natural phenomenon and a risk common to all in the Rapid City area during the winter months." We do not agree with DMVA.

[¶ 21.] This Court in *Rohlck v. J & L Rainbow,* Inc., 1996 SD 115, ¶ 19, 553 N.W.2d 521, 526–27, reaffirmed its view that:

> Worker's compensation statutes "do not limit [their] application to the periods during which an employee is actually engaged in the work that he is hired to perform." ... This Court construes the phrase "out of and in the course of employment" liberally ... In determin-

ing whether an injury arose out of and in the course of employment, this Court looks to whether the activity which resulted in the injury is one which the employee might reasonably be expected to engage ... whether the activity which resulted was naturally related or incidental to the employment ... whether the activity was expressly or impliedly authorized by the contract or the nature of employment.

[¶ 22.] Under *Rohlck,* we look to whether Steinberg's activity of crossing the street to reach the parking lot where her car was located was one in which she might reasonably expect to engage. We find the answer obvious. DMVA provided the parking lot in which her car was parked, and to get there Steinberg had no choice but to cross the camp street. Steinberg was not required to stay on camp premises during her lunch break. Steinberg was walking to her car during her lunch hour, shortly after 12:00 p.m., a reasonable time for an employee to take a lunch break. Thus, Steinberg was "in an area where she might reasonably be and at the time when her presence there would normally be expected." 1 Larson's Workers' Compensation Law § 13.01[2][b], at 13–8 (citing *DiNardo v. Newark Bd. of Educ.,* 118 N.J.Super. 536, 289 A.2d 259 (1972) (claimant was compensated when she was injured after work when her heel caught in a crack in a sidewalk adjacent to the school building where she worked)). "[A]ccidental injuries suffered by an employee while leaving the building wherein his actual work is being done is generally deemed to have arise out of and in the course of the employment within the meaning of the workmen's compensation acts." *Donovan v. Powers,* 86 S.D. 245, 193 N.W.2d 796, 799 (1972) (citing 58 Am. Jur., Workmen's Compensation, § 221).

---

4. Steinberg stated in her affidavit that she received the following message by e-mail from DMVA, which provides: "it is the policy of the State of South Dakota that commercial vendors may not solicit business on state property, nor may SDARNG employees be solicited during working hours. 'Working hours' include breaks and lunch periods, if the employee is on state grounds."

[¶ 23.] We examined similar circumstances of the claimant in *Howell v. Cardinal Industries, Inc.,* 497 N.W.2d 709 (S.D. 1993). In *Howell,* this Court again stated the rule:

> This court looks to whether the activity which resulted in the injury is one in which an employee might reasonably be expected to engage or has been impliedly authorized to perform ... or "if what he is doing is naturally related or incidental to his employment ..." [Employee] exited [Employer's] building through the exit [Employer] requested [Employee] and the other employees to use upon punching out from work. She utilized this exit to go to [Employer's] parking lot. [Employee] was injured only moments after leaving [Employer's] building while still on [Employer's] parking lot which was controlled and maintained by [Employer] for their employees. Clearly, crossing [Employer's] parking lot after punching out at the conclusion of her workshift is "naturally and incidentally related to her employment ..." [Employee] should be compensated for her injuries as she was injured out of and in the course of her employment.

*Id.* at 711. Also, in *Walz,* although a bad faith case, this Court left no doubt as to the compensability of an injury under circumstances virtually identical to those here. The employee in *Walz* worked the hours 8:00 a.m. to 4:30 p.m., with an unpaid lunch break from 11:30 p.m. to 12:00 p.m. "Employees were free to leave the premises during the lunch break, and doing so was an accepted practice. After exiting the building at approximately 11:30 a.m., [Employee] slipped and fell on ice in Employer's parking lot, fracturing her right wrist." *Walz,* 1996 SD 135, ¶ 2, 556 N.W.2d at 69. This Court also stated:

> [Employee's accident occurred] during her lunch break and still on Employer's premises. It cannot be ignored that she had a lunch break *because* she was at work. She would not have been in Em-

ployer's parking lot if she had not been working that day. *See Phillips v. John Morrell & Co.,* 484 N.W.2d 527, 530 (S.D.1992) (holding injury "arose out of" employment when claimant would not have become injured but for the fact that he was at work.)

*Id.* ¶ 15, 556 N.W.2d at 72.

[¶ 24.] There also exists the principle that travel between two parts of the employer's premises is compensable. "By establishing or sponsoring a parking lot not contiguous to the working premises, the employer has created the necessity for encountering the hazards lying between these two portions of the premises." 1 Larson's Workers' Compensation Law § 13.01[2][b], at 13–9 to 13–10. Here, Steinberg worked in Building 603, one of the six buildings located in the Camp Rapid complex containing facility management offices. When Steinberg left for lunch on March 3, she stepped out of Building 603, and began to cross the camp road between Building 603 and 703, heading for a small parking lot where her car was parked. This parking lot was provided by DMVA for the use of Steinberg and other employees. Halfway across this road, Steinberg slipped, fell and was injured to the extent she eventually had to have two discs removed from her neck by surgery.

[¶ 25.] DMVA's argument with regard to this issue rests upon the premise that the source of Steinberg's injury (slipping on ice) was a natural phenomenon and a risk common to all in the Rapid City area. *In Nippert v. Shinn Farm Const. Co.,* 223 Neb. 236, 388 N.W.2d 820 (1986), the court rejected the increased risk rule now advocated by DMVA. The court concluded the better rule is that "an employee's injuries are compensable as long as his employment duties put him in a position that he might not otherwise be in which exposes him to a risk, even though the risk is not greater than that of the general public." *Id.* at 822. In 1 Larson's Workers' Compensation Law § 8.12 at 3–23 (1985), this rule is specifically explained as follows:

[W]hen one in the course of his employment is reasonably required to be at a particular place at a particular time and there meets with an accident, although one which any other person then and there present would have met with irrespective of his employment, that accident is one 'arising out of' the employment of the person so injured.

*Nippert*, 388 N.W.2d at 822. The court concluded by stating "[t]he record shows that Nippert's employment required him to be in the area where the tornado struck. The record also reflects that the storm caused Nippert's injuries." *Id.*

[¶ 26.] Consider the employee who has an accident while driving a state vehicle while on a work-related errand or excursion. Under DMVA's approach, that employee is precluded from compensation for this work-related injury simply because driving is a risk or hazard to which the general public is exposed. Under this standard many employees would not be able to recover compensation for their employment-related injuries. Any claims of employer-based negligence would be barred by SDCL 62–3–2, leaving the injured employee without a remedy against the employer.

[¶ 27.] We decline to accept DMVA's "increased risk" doctrine argument for another reason. This argument creates a danger of imposing a requirement of faultfinding on the part of an employer. One of the primary purposes of "the South Dakota Worker's Compensa-tion Act is to provide an injured employee with a remedy which is both expeditious and *independent of proof of fault.*" *Sowards v. Hills Materials Co.*, 521 N.W.2d 649, 652 (S.D.1994) (citing *Scissons v. City of Rapid City*, 251 N.W.2d 681, 686 (S.D. 1977)) (emphasis added). *See also Iddings v. Mee–Lee*, 82 Hawai'i 1, 919 P.2d 263, 270 (1996) (quoting 2 Larson's Workers' Compensation Law § 72.22, at 14–152) (explaining the purpose of employer's immunity from common law actions under workers' compensation scheme is quid pro quo by which the employer gives up normal defenses and assumes automatic liability while the employee gives up the right to common law verdicts). Under the workers' compensation acts, the theory of negligence as the basis of liability is discarded. *Keil*, 355 N.W.2d at 530. Under the Workmen's Compensation Act, the employee may recover for all injuries arising out of and in the course of employment, regardless of any actionable fault upon the part of the employer. *Stevenson v. Douros*, 58 S.D. 268, 235 N.W. 707, 708 (1931).

[¶ 28.] The danger can be seen in DMVA's argument that it "had been making reasonable efforts to remove snow and ice from the street upon which [Steinberg] fell. [DMVA] had plowed the street within one hour prior to [Steinberg's] fall." Steinberg in her appellate brief counters with the fact that DMVA had failed to salt or sand the streets within Camp Rapid, and thus she was subjected to a hazard greater than the general public.[5]

---

**5.** DMVA relies upon *Aadland v. St. Luke's Midland Regional Medical Center*, 537 N.W.2d 666 (S.D.1995) and *Roberts v. Stell*, 367 N.W.2d 198 (S.D.1985) in support of its position. Both cases are distinguishable. In both *Roberts* and *Aadland* we denied recovery to claimants who had slipped on ice on employee premises. However, the issue in *Aadland* was whether an "on-call" employee, not on an errand pursuant to call, should be compensated for an injury suffered on the employer's premises. *Walz*, 1996 SD 135, ¶ 16 n. 10, 556 N.W.2d 68, 72, n. 10. Aadland had finished her regular shift and left the place of employment entirely. While the employee in *Aadland* was injured on the premises owned by her employer, "[she] was not required to be there at the time as she had not been called back to work and she was not required to remain on the premises when on call." 537 N.W.2d at 670. Thus, since she was not on an errand pursuant to call at the time, "Aadland failed to show her injuries were caused by a hazard imposed upon Aadland by reason of her employment greater than that to which the public generally in Aberdeen was subjected." *Id.* Further, because Aadland was not on an errand pursuant to employer call at the time of her injury and was on the employer's premises on her own time, we held the facts did not warrant a conclusion

[¶ 29.] In this case, Steinberg opted to bring a workers' compensation claim against State, thus, DMVA is not allowed to shift the "blame" from itself by arguing it did everything reasonable to remove the snow where Steinberg fell. Whether DMVA was or was not negligent in its snow clearance on the road where Steinberg fell, is thus entirely irrelevant to the issue of compensability. If the injured employee can prove the injury arose out of and in the course of employment, and that employment related incident was a major contributing cause of the resulting condition, the employer's liability is established.

[¶ 30.] In this case, it was solely Steinberg's employment, and the necessary inci-dent of that employment that Steinberg obtain lunch in the middle of her assigned hours, that caused Steinberg to be on this ice on her employer's premises. We reverse and remand for further proceedings consistent with this opinion.

[¶ 31.] MILLER, Chief Justice, and SABERS, AMUNDSON and KONENKAMP, Justices, concur.

---

that her injury did occur in the course of her employment. *Id.*

Similarly, *Roberts* is wholly unlike the facts of this case. As this Court in *Walz* observed, "[in *Roberts*] this court upheld the denial of benefits to a live-in employee when she slipped and fell on her employer's premises *on her day off,* and is therefore distinguishable." 1996 SD 135, ¶ 14, 556 N.W.2d at 72. (emphasis in original). Our decisions in *Howell* and *Walz* leave no doubt that under these facts, Steinberg's fall is compensable as a matter of law.