2005 SD 12

**Fred Alfred BOSTICK, Petitioner and Appellant,**

v.

**Douglas WEBER, Warden, South Dakota State Penitentiary, Respondent and Appellee.**

No. 23243.

Supreme Court of South Dakota.

Considered on Briefs Nov. 15, 2004.

Decided Jan. 19, 2005.

Lawrence E. Long, Attorney General, Frank Geaghan, Assistant Attorney General, Pierre, SD, for petitioner and appellant.

Steve Miller, Sioux Falls, SD, for respondent and appellee.

GILBERTSON, Chief Justice.

[¶ 1.] Petitioner Fred A. Bostick filed a habeas corpus petition alleging ineffective assistance of counsel at his original trial in 1997. After a certificate of probable cause had been issued but before the habeas hearing was held, the Petitioner was paroled from the state penitentiary. The circuit court held Bostick's parole mooted his right to seek habeas relief in the courts of South Dakota. Bostick appealed contending the conditions of his parole constituted custody and imposed a significant restraint on his liberty within the meaning of SDCL 21–27–1, and therefore he was entitled to seek habeas relief. Affirmed.

### FACTS AND PROCEDURE

[¶ 2.] On May 5, 1997, Fred A. Bostick escaped while a prisoner at the Minnehaha County Community Corrections Facility in Sioux Falls, South Dakota. Petitioner was charged with escape in violation of SDCL 22–11A–2, and subsequently convicted by a jury.[1] On February 12, 1998, Petitioner was sentenced by the Honorable Judith Meierhenry to eight years in the state penitentiary.

[¶ 3.] In July 2001, Petitioner filed a pro se habeas action while in custody at the State Penitentiary. Attorney Steve Miller was appointed by the circuit court to assist Petitioner with his request for habeas relief. The State's motion to dis-

---

1. SDCL 22–11A–2 provides: "Any prisoner who escapes is guilty of a Class 4 felony."

miss the petition was granted by the circuit court, which then denied a certificate of probable cause. After appeal, this Court issued an order of limited remand, directing that Petitioner's claim of ineffective assistance of counsel be heard on the merits and decided.

[¶ 4.] In December 2003, prior to the habeas hearing, Petitioner was granted parole effective February 3, 2004. A hearing was held in circuit court to determine if Petitioner's parole mooted his habeas action. The circuit court ruled the habeas action was mooted by Petitioner's parole and dismissed the habeas petition.

[¶ 5.] After the circuit court's dismissal of the habeas action on April 2, 2004, Petitioner requested a certificate of probable cause to appeal the circuit court's ruling on the issue of mootness. This Court issued an order of limited remand, directing the circuit court to determine the issue of mootness. The sole issue on appeal is one of first impression in South Dakota:

> Whether a formerly incarcerated inmate on conditional parole, but not physically confined to a particular facility, is "committed or detained, imprisoned or restrained of his liberty" within the meaning of SDCL 21–27–1 such that a habeas corpus action is not rendered moot.

### STANDARD OF REVIEW

[¶ 6.] "Statutory interpretation and application are questions of law." *Block v. Drake,* 2004 SD 72, ¶ 8, 681 N.W.2d 460, 463 (citing *Steinberg v. State Dept. of Military and Veterans Affairs,* 2000 SD 36, ¶ 6, 607 N.W.2d 596, 599). We review conclusions of law concerning a writ of habeas corpus under the de novo standard, giving

no deference to the lower court's decisions. *Jackson v. Weber,* 2001 SD 30, ¶ 9, 637 N.W.2d 19, 22 (citing *Jenner v. Dooley,* 1999 SD 20, ¶ 11, 590 N.W.2d 463, 468).

[¶ 7.] We use statutory construction to discover the true intent of the legislature in enacting the law, which is ascertained primarily from the language used in the statute. *State v. Myrl & Roy's Paving, Inc.,* 2004 SD 98, ¶ 6, 686 N.W.2d 651, 653 (citing *Martinmaas v. Engelmann,* 2000 SD 85, ¶ 49, 612 N.W.2d 600, 611). We confine ourselves to the language used by the legislature in order to determine what the legislature said, rather than what the courts think it should have said. *State v. I–90 Truck Haven Service, Inc.,* 2003 SD 51, ¶ 3, 662 N.W.2d 288, 290 (citing *Martinmaas,* 2000 SD 85, ¶ 49, 612 N.W.2d at 611). In doing so, we must attempt to give words their plain meaning and effect, and read statutes as a whole, as well as enactments relating to the same subject. *Id.*

### ANALYSIS AND DECISION

[¶ 8.] Under the South Dakota habeas corpus statute, a petitioner is not entitled to a writ of habeas corpus unless the petitioner is *"committed or detained, imprisoned or restrained of his liberty*[.]" SDCL 21–27–1 (emphasis added).[2] An appeal by a petitioner who is not committed, detained, imprisoned, or restrained of his liberty, is moot and we will not consider its merits. *Moeller v. Solem* (Moeller I), 363 N.W.2d 412, 414 (S.D. 1985) (citing Application of Painter, 85 S.D. 156, 161, 179 N.W.2d 12, 14 (1970)). Mootness arises when an individual has finished serving his sentence and is discharged from prison or confinement. *Ex parte Wilken,* 22 S.D.

2. SDCL 21–27–1 provides:
Any person *committed or detained, imprisoned or restrained of his liberty,* under any color or pretense whatever, civil or criminal, except as provided herein, may apply to the Supreme or circuit court, or any justice or judge thereof, for a writ of habeas corpus. (emphasis added).

135, 136, 115 N.W. 1075, 1075 (1908). Mootness also bars habeas relief when an individual is admitted to bail, as that individual is no longer in custody nor restrained of his or her freedom. *Painter,* 85 S.D. at 159, 179 N.W.2d at 13.

[¶ 9.] Mootness also precludes relief when a petitioner seeks to use the habeas remedy to challenge a prior conviction for which a sentence has been completed, as mootness cannot be overcome based on the possibility that a past criminal conviction may enhance the penalty for a future conviction. *Moeller I,* 363 N.W.2d at 414. This Court will "not hear any appeal on the assumption that the defendant will commit another crime and be imprisoned again[.]" *Id.* (quoting *Maxwell v. State,* 261 N.W.2d 429, 432 (S.D.1978)).

[¶ 10.] Petitioner argues that "restrained of his liberty" encompasses more than physical restraint. Petitioner contends the phrase should be read to include an individual on parole, as such a person is considered to be a prisoner and in custody under this Court's interpretation of SDCL 23A–27–36 in *State v. Karp,* 527 N.W.2d 912 (S.D.1995). In *Karp,* SDCL 23A–27–36 was used to enhance the third driving-under-the-influence conviction of a probationer, a subject unrelated to habeas relief. SDCL 23A–27–36 pertained to the enhancement of sentences for prisoners who committed crimes. (repealed 2004).[3] The language of the statute itself noted that the definition of prisoner as used in SDCL 23A–27–36 was applicable only to that specific code section. *Id.*

[¶ 11.] The habeas statutory scheme is codified at SDCL Chapter 21–27. The purpose of the habeas corpus statutory scheme is to provide a process whereby persons illegally restrained of liberty may petition a court for release. SDCL 21–27–1; *State v. Jameson,* 52 SD 524, 527, 219 N.W.2d 118, 119 (1928). No definitions for the terms *"committed, detained, imprisoned or restrained of his liberty"* are provided within SDCL 21–27–1, or within Chapter 21–27. However, the statutory scheme in SDCL Chapter 21–27 references actual custody as the prerequisite for habeas relief. SDCL 21–27–3 provides in relevant part:

An application for a writ of habeas corpus shall be in writing and signed by the applicant or some person on his behalf, setting forth the facts concerning his detention and in whose *custody* he is detained, and shall be accompanied by a copy of the warrant of commitment or other documentary authority, if any, or by an affidavit that such copy has been demanded of the person in whose *custody* he is detained and by him refused or not given.

(emphasis added).

[¶ 12.] The habeas statutory scheme is replete with references to physical custody. *See* SDCL 21–27–3, SDCL 21–27–3.2, SDCL 21–27–9.1, SDCL 21–27–9.2, SDCL 21–27–11. SDCL 21–27–9.1 provides the manner in which a habeas writ may be served, noting that it may be served on the person to whom it is directed, "or with any of his subordinates who may be *at the place* where the applicant is detained." (emphasis added). SDCL 21–27–9.2 provides the person to whom the writ is addressed "shall produce the *body* of the

---

3. SDCL 23A–27–36, repealed in 2004, provided:

If any prisoner commits a crime, upon conviction, the sentence of the prisoner shall not commence to run until the expiration of the last sentence of his imprisonment. The term "prisoner" *as used in this section* includes every person in custody, under arrest, or under process of law issued from a court of competent jurisdiction. (emphasis added).

applicant before the court at the hearing of the cause of imprisonment or detainer."

[¶ 13.] Petitioner argues that the federal habeas remedy at 28 U.S.C.A. § 2254(a), which utilizes the word "custody," has been interpreted by the United States Supreme Court in *Jones v. Cunningham* as applicable to an individual on parole. 371 U.S. 236, 243–44, 83 S.Ct. 373, 377, 9 L.Ed.2d 285, 291 (1963).[4] Petitioner also urges this Court to consider and follow those jurisdictions that have adopted an expansive view of the term "custody" in state habeas corpus remedies. *See In re Azurin,* 87 Cal.App.4th 20, 104 Cal.Rptr.2d 284 (2001); *In re Horst,* 270 Kan. 510, 14 P.3d 1162 (2000); *Hoang v. State,* 872 S.W.2d 694 (Tex.Crim.App.1993); *Monohan v. Burdman,* 84 Wash.2d 922, 530 P.2d 334 (1975); *Staples v. State,* 274 A.2d 715 (Me.1971); *State ex rel Atkinson v. Tahash,* 274 Minn. 65, 142 N.W.2d 294 (1966); *Commonwealth ex rel Ensor v. Cummings,* 420 Pa. 23, 215 A.2d 651 (1966); *State v. Gray,* 406 S.W.2d 580 (Mo.1966); *Garnick v. Miller,* 81 Nev. 372, 403 P.2d 850 (1965); *Schooley v. Wilson,* 150 Colo. 483, 374 P.2d 353 (Co.1962). However, an almost equal number of states have held the opposite, that a parolee is not restrained of his or her freedom so as to avail him or herself of the habeas remedy. *See People ex rel Williams v. Morris,* 44 Ill.App.3d 39, 2 Ill.Dec. 631, 357 N.E.2d 851 (1976); *Sorrow v. Vickery,* 228 Ga. 191, 184 S.E.2d 462 (1971); *People ex rel Wilder v. Markley,* 26 N.Y.2d 648, 307 N.Y.S.2d 672, 255 N.E.2d 784 (1970); *Williams v. State,* 42 Ala.App. 140, 155 So.2d 322 (1963), *cert denied,* 275 Ala. 702, 155 So.2d 323 (1963); *McGloin v. Warden*

*of Maryland House of Correction,* 215 Md. 630, 137 A.2d 659 (1958); *White v. Gladden,* 209 Or. 53, 303 P.2d 226 (1956); *State v. Ballard,* 15 N.J.Super. 417, 83 A.2d 539 (A.D.1951), *aff'd* 9 N.J. 402, 88 A.2d 537 (1952); and *Ex parte Davis,* 11 Okla.Crim. 403, 146 P. 1085 (1915).

■ [¶ 14.] Our state habeas remedy is not as broad as the federal habeas corpus remedy. *Painter,* 85 S.D. at 161, 179 N.W.2d at 14. Our remedy extends only as far as the language used by our legislature allows, as federal decisions on the application of the federal habeas statute do not control the interpretation of our state habeas remedy. *Cowell v. Leapley,* 458 N.W.2d 514, 517 (S.D.1990). We need not consider the broader language of other state habeas remedies in light of the narrower language used in our habeas statutory scheme. *See Weisbeck v. Hess,* 524 N.W.2d 363, 373 (S.D.1994) (holding because the language in a Massachusetts statute was different and broader than the language in the South Dakota statutory scheme, the precedential value of cases interpreting that statute was questionable).

[¶ 15.] In *Rennich–Craig v. Russell,* our most recent precedent in this area, we determined that a parolee *physically confined* to a nursing home for medical assistance and care while on conditional parole was in "custody" for purposes of the habeas statutory scheme. 2000 SD 49, ¶ 11, n. 4, 609 N.W.2d 123, 126. While incarcerated at the women's state penitentiary, Rennich developed a debilitating illness that required greater medical care than that available at the penitentiary. *Id.* Ren-

---

4. 28 U.S.C. § 2254(a) provides in relevant part:

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person *in custody* pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(emphasis added)

nich's sentence was commuted by the governor, conditioned on signing a parole agreement with the Board of Pardons and Paroles. *Id.* The parole agreement physically confined Rennich to a nursing home under the usual terms and conditions of parole.[5] *Id.* However, in addition to the usual terms and conditions, Rennich was unable to physically depart the nursing facility to attend her habeas hearing without the court's approval and transportation provided via the sheriff. *Id.* We held Rennich was "in custody and her liberty restrained by the State" and therefore her habeas petition was not moot. *Id.*

[¶ 16.] In the instant case, Petitioner is not physically confined to or restrained at a particular institution by the terms of his parole. Nor is Petitioner required to reside at a particular location as a part of his parole agreement. While there are several restrictions on his activities, Petitioner is not *physically* restrained under its terms.[6] Lacking physical restraint, Petitioner cannot be said to be illegally restrained or illegally in the physical custody of any person, much less Douglas Weber, Warden of the South Dakota State Penitentiary.[7]

[¶ 17.] A writ of habeas corpus directed to Douglas Weber, Warden of the South Dakota State Penitentiary would have no effect upon Petitioner, as Weber cannot deliver Petitioner nor release him, as Petitioner is physically free to move about the community and select his own place of residence. *See Rennich–Craig*, 2000 SD 49, ¶ 30, 609 N.W.2d at 129 (Konenkamp, J., dissenting). Nor is there any legal process whereby Weber can compel Petitioner to appear before the habeas court. Petitioner's appearance at his 2004 post-parole habeas hearing was by his own free will.

[¶ 18.] It is true that Petitioner is in the legal custody of the Board of Pardons and Paroles until the expiration of his sentence in February 2006. However, a parolee is not "imprisoned," "detained" or "restrained" physically by the Board.[8] Petitioner cannot be placed back in prison unless he violates the conditions of his parole. In the absence of actual physical custody of the Petitioner, the mere possibility that he may be returned to prison for violating his parole agreement is insufficient to invoke the extraordinary relief afforded by the habeas remedy.

[¶ 19.] While it may seem unfair and overly technical to require Petitioner to be returned to prison in order to avail himself of the habeas corpus remedy, this Court must interpret the laws as written and intended by the legislature. It is not for this Court to interpret our statutory code in a manner that comports with what this, or any other court, think the code should say. *See Myrl & Roy's Paving, Inc.*, 2004 SD 98, ¶ 6, 686 N.W.2d at 653–54 (citation omitted).

[¶ 20.] We affirm.

---

5. SDCL 24–15–1.1 provides in relevant part that parole is "the discretionary conditional release of an inmate from actual penitentiary custody before the expiration of the inmate's term of imprisonment. The prisoner remains under the legal custody of the Department of Corrections until the expiration of the inmate's term of imprisonment."

6. Petitioner's parole agreement requires advance approval from his probation officer prior to buying or driving an automobile, in-

curring debts, opening or using a checking account, changing employment or place of residence and pawning.

7. Petitioner filed his habeas corpus petition as a civil action against Weber.

8. A parolee is subject to limitations on the types of activities in which he or she may engage per SDCL 24–15–11.

[¶ 21.] KONENKAMP, Justice and WILBUR, Circuit Judge, concur.

[¶ 22.] ZINTER, Justice, concurs with a writing.

[¶ 23.] SABERS, Justice, dissents.

[¶ 24.] WILBUR, Circuit Judge, sitting for MEIERHENRY, Justice, disqualified.

ZINTER, Justice (concurring).

[¶ 25.] I concur and write to emphasize that our precedent has been consistently in line with those courts holding that a parolee is not committed, detained, imprisoned, or otherwise restrained of his liberty sufficient to invoke habeas corpus relief. I also write to address an additional statutory argument raised by Bostick.

[¶ 26.] Although there is a split of authority among other courts on the right to habeas relief following parole, our decision is governed by our prior decisions on this issue. In *Moeller v. Solem,* 395 N.W.2d 165, 166 (S.D.1986), this Court held that a released prisoner seeking habeas relief is no longer under "restraint of liberty." Therefore, if a habeas petitioner "is neither committed, detained, imprisoned, nor otherwise restrained of his liberty, the appeal is moot and it is unnecessary to consider the merits of [the request for habeas relief]." *Id.* (citing *Moeller v. Solem,* 363 N.W.2d 412, 414 (S.D.1985)). This Court explained:

... the additional burdens placed upon [the petitioner] in the penitentiary, [are] no longer a consideration ... thus, the conviction cannot be said to have some restraint upon his liberty. Inasmuch as we will not assume that [the petitioner] will commit another crime and be imprisoned again we will not entertain this appeal and hereby dismiss it as moot.

*Id.*

[¶ 27.] Although Bostick contends that we should adopt the contrary position adopted by some other courts, we have previously rejected this invitation. In *Application of Painter,* 85 S.D. 156, 160, 179 N.W.2d 12, 14 (1970), this Court stated that it was aware of the decision in *Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), which concluded that a habeas corpus proceeding was not rendered moot when the petitioner was released from custody. However, we distinguished that federal position noting that "[t]he present federal habeas corpus statute [was] broader than the remedy afforded in this state." *Painter,* 85 S.D. at 161, 179 N.W.2d at 14 (citation omitted).

[¶ 28.] Furthermore, after *Painter,* this Court decided *Rennich–Craig v. Russell,* 2000 SD 49, 609 N.W.2d 123, in 2000. In *Rennich–Craig,* three members of this Court determined that under the special facts of that case[9] "Rennich[, a parolee,

9. The facts of that case reflected that: [w]hile in prison, Rennich developed a debilitating illness, ... which left her confined to a wheelchair. Consequently, the degree of care that she required was beyond that offered in the women's prison. Therefore, ... Rennich's sentence [was commuted] conditioned on her signing a parole agreement with the Board of Pardons and Paroles. Pursuant to the agreement, Rennich [was] confined to the Kingsbury Memorial Manor in Lake Preston, South Dakota for medical assistance and care, subject to the usual terms and conditions of parole.

The following demonstrates some of the limitations of her parole: On October 16, 1998, Rennich formally requested that she be released from the Kingsbury Manor to attend the hearing on her Motion for Summary Judgment. The request, directed to the habeas court, involved the sheriff transporting her to the courthouse. The habeas court denied her request. *Id.* ¶ 11 n. 4.

was factually] under the custody and control of the State, [therefore the] habeas action [was] not moot." *Id.* ¶ 11 n. 4. However, three members of this Court also agreed that generally:

> *a person on parole is not entitled to bring a habeas corpus petition.* However, if there is any evidence that such person is being physically confined or otherwise restrained of her liberty, then a habeas action is warranted.

*Id.* ¶ 27 (Miller, C.J., concurring specially) (emphasis added) (agreeing with Konenkamp and Gilbertson, J.J., dissenting.)

[¶ 29.] Because the facts of Bostick's case place him within this general rule, he raises an additional argument under SDCL 24–15–13, another provision of the Habeas Corpus Act. Bostick argues that by adopting that statute, the Legislature defined "custody" to include prisoners on parole.

[¶ 30.] SDCL 24–15–13 provides:

> Each parolee shall at all times be considered confined, in the legal custody of the Department of Corrections, and shall remain under conviction for the crime for which the parolee was convicted and sentenced.

Under this statute, Bostick is under the *legal* custody of the Department of Corrections. However, his argument fails to recognize the difference between physical custody and legal custody. The court in *People ex rel Williams v. Morris*, 44 Ill. App.3d 39, 2 Ill.Dec. 631, 357 N.E.2d 851 (1976) explained the difference. It explained that, while a parolee is under the legal custody of the Department of Corrections:

> a parolee is not imprisoned and is subject to reimprisonment only if he violates a condition of his parole. No one has actual custody or physical control of the parolee, and where, as here, the parolee is at liberty to come into court

on his own, there is little sense in directing a writ of habeas corpus to a parole officer or parole board whose only authority to take physical custody of the parolee is dependent upon that parolee's breaching of a condition of his parole.

*Id.* at 852. Additionally, "it is fundamental that habeas corpus is available to test the legality of present confinement only, and if the applicant is no longer incarcerated there is nothing for the courts to adjudicate." *Sorrow v. Vickery,* 228 Ga. 191, 184 S.E.2d 462 (1971) (internal citations omitted).

 Here, Bostick is no longer confined, and he is at liberty to come into court on his own. Because he is on parole, our prior decisions clearly preclude habeas corpus relief. SDCL 24–15–13 does not change that result. I therefore concur.

SABERS, Justice (dissenting).

[¶ 32.] I dissent for the following reasons:

1. Bostick appeals claiming the conditions of his parole constitute custody and impose a significant restraint on his liberty under SDCL 21–27–1. We previously issued an order of limited remand directing that the claim of ineffective assistance of counsel be heard on the merits. Despite this clear direction, the circuit court ruled that Bostick's parole mooted his action and dismissed. We should reverse.

2. SDCL 21–27–1 provides:

> Any person *committed or detained, imprisoned or restrained of his liberty,* under any color or pretense whatever, civil or criminal, except as provided herein, may apply to the Supreme or circuit court, or any justice or judge thereof, for a writ of habeas corpus.

(emphasis added). I respectfully submit that the conditions of Bostick's parole constitute custody and impose significant re-

straints on his liberty. If he violates even the most minor condition of his parole, his parole officer can have him yanked into court and his parole will be revoked simply on the basis that his conduct was not as good as it should be. It is difficult to think for one moment that this is not a significant restraint on his liberty under SDCL 21–27–1.

3. In paragraph 7[10] (see footnote below), the majority opinion provides mere "lip service" to the old clichés about attempting to give words their plain meaning and effect, ... and then, because the plain meaning and effect are inadequate to produce the desired effect, it rewrites the statute by inserting the word "physically" in front of "restrained of his liberty." We are supposed to confine ourselves to the language used by the legislature to determine what the legislature said, rather than what the courts think it should have said. The majority opinion sets forth the correct law and promptly proceeds to violate it. I will have none of that and I dissent.

4. Incredibly, the majority opinion ends with the following statements in paragraph 19:

While it may seem unfair and overly technical to require Petitioner to be returned to prison in order to avail himself of the habeas corpus remedy, this Court must interpret the laws as written and intended by the legislature. It is not for this Court to interpret our statutory code in a manner that comports with what this, or any other court, think the code should say[.]

To which I can only add: Amen!

[¶ 33.] We should follow the law and not our last minute rewrite of the law. *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); *Rennich–Craig v. Russell*, 2000 SD 49, 609 N.W.2d 123; SDCL 21–27–1.

---

**10.** Paragraph 7 of the majority opinion provides:

We use statutory construction to discover the true intent of the legislature in enacting the law, which is ascertained primarily from the language used in the statute. *State v. Myrl & Roy's Paving, Inc.*, 2004 SD 98, ¶ 6, 686 N.W.2d 651, 653 (citing *Martinmaas v. Engelmann*, 2000 SD 85, ¶ 49, 612 N.W.2d 600, 611). We confine ourselves to the language used by the legislature in or-

der to determine what the legislature said, rather than what the courts think it should have said. *State v. I–90 Truck Haven Service, Inc.*, 2003 SD 51, ¶ 3, 662 N.W.2d 288, 290 (citing *Martinmaas*, 2000 SD 85, ¶ 49, 612 N.W.2d at 611). In doing so, we must attempt to give words their plain meaning and effect, and read statutes as a whole, as well as enactments relating to the same subject. *Id.*